UNITED STATES of America, Plaintiff,

v.

**MATUSOFF RENTAL COMPANY, et al., Defendants.**

No. C–3–99–626.

United States District Court, S.D. Ohio, Western Division.

Sept. 24, 2001.

---

Dale Goldberg, Dayton, OH, Joan Magagna, Washington, DC, Isabelle Thabault, Bill Lann Lee, Ellen Bowden, Donald Tunnage, Washington, DC, for Plaintiff.

Roger Makley, Thomas Whelley, II, Dayton, OH, for Defendants.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR EXPENSES (DOC. # 42); DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR A SINGLE TRIAL AND TO COMPEL DISCOVERY OF DEFENDANTS' FINANCES (DOC. # 44); CAPTIONED CAUSE ORDERED BIFURCATED, ALTHOUGH NOT IN MANNER SUGGESTED BY DEFENDANTS

RICE, Chief Judge.

The Government brings this litigation under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, alleging that the Defendants have discriminated against prospective tenants at the Villa de Marquis apartment complex, located in Xenia, Ohio, on the basis of their race and familial status. In its Amended Complaint (Doc. # 12), the Plaintiff requests that, among other forms of relief, the Court award compensatory and punitive damages to persons who have been aggrieved by the Defendants' alleged discriminatory practices, i.e., the prospective tenants. Defendant Matusoff Rental Company is alleged to be the owner of the complex. Defendant Roger Matusoff ("Matusoff") is alleged to be the managing agent and owner of Matusoff Rental Company. Defendants Rebecca McCord, Peggy Penwell and Lonnie Penwell are alleged to be current or former employees of Matusoff Rental Company.

This case is now before the Court on Plaintiff's Motion for Expenses (Doc. # 42), and its Motion for a Single Trial and to Compel Discovery on Defendants' Finances (Doc. # 44), which the Court rules upon in the above order.

*I. Plaintiff's Motion for Expenses (Doc. # 44)*

 The parties participated in Court supervised mediation in an effort to resolve this litigation. Although they were able to agree on many provisions of a proposed settlement agreement, they could not agree on the amount of compensation the Defendants would pay to the aggrieved parties. As a manner of resolving this impasse, it was agreed that the Plaintiff would take a pre-judgment debtor's exam of Matusoff, in order to ascertain whether he had the financial ability to pay the amount of compensation being demanded by the Plaintiff to settle this lawsuit. *See* Doc. # 40. That proceeding was to take place in Las Vegas, Nevada, on January 3, 2001. *Id.* Although the pre-judgment debtor's exam commenced as scheduled, Matusoff refused to provide complete answers to all of the Plaintiff's questions. When the Court was contacted during that proceeding, it told Matusoff that he was required to answer all questions regarding his financial condition, or that he could refuse to answer those questions, a course of action which would result in the termination of both that proceeding and the Court supervised mediation efforts. Ultimately, Matusoff refused to answer all questions put to him by Plaintiff's counsel, which resulted in the pre-judgment debtor's exam and the mediation being terminated.

With its Motion for Expenses, the Plaintiff requests that the Court award it the sum of $3000.03, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compensate it for the expenses incurred to participate in the fruitless pre-judgment debtor's exam.[1] The Plaintiff relies upon Rule 37(b)(2), which provides, in pertinent part:

> (2) *Sanctions by Court in Which Action is Pending.* If a party ... fails to obey an order to provide ... discovery ..., the court in which the action is pending may ... require the party failing to obey the

order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

As can be seen, Rule 37(b)(2) permits a District Court to order a party, *who has failed to obey an order to provide discovery,* to pay the expenses, including reasonable attorney's fees, his opponent has incurred as a result of the failure. *See Bass v. Jostens, Inc.,* 71 F.3d 237 (6th Cir.1995) (discussing sanctions District Court may impose pursuant to Rule 37(b)(2) *for failure to provide discovery* ). Herein, Matusoff did not disobey an order of this Court that he provide *discovery.*[2] The pre-judgment debtor's exam was most decidedly not part of the Plaintiff's discovery of information from Matusoff; rather, it was an instrument of settlement. That point is vividly demonstrated by the telephone conference call which the Court and counsel conducted on November 27, 2000. *See* Doc. # 60. During that call, the Court indicated that Plaintiff could not use the financial information it obtained as a result of the pre-judgment debtor's exam in the event that the case was not settled. The Court told Plaintiff's counsel that, "[i]f settlement falls through, you simply have to garner the information by standard discovery means." *Id.* at 10–11. *See also,* Doc. # 40.

Since no order, issued by the Court in connection with the pre-judgment debtor's exam, directed Matusoff to provide discovery, the Court cannot award expenses to Plaintiff in accordance with Rule 37(b)(2), as requested. Accordingly, the Court overrules Plaintiff's Motion for Expenses (Doc. # 42).

*II. Plaintiff's Motion for a Single Trial and to Compel Discovery on Defendants' Finances (Doc. # 44)*

The genesis of this motion is the desire of Defendant Roger Matusoff to maintain the privacy of his personal finances.[3] Plaintiff

---

1. That figure is comprised of $2547.30, for attorney's fees (35 hours at $72.78 per hour), and $452.73, for travel expenses.

2. For purposes of ruling on the Plaintiff's Motion for Expenses (Doc. # 42), the Court assumes that

Matusoff disobeyed an order from the Court regarding his pre-judgment debtor's exam.

3. That desire also led to the termination of the pre-judgment debtor's exam and mediation efforts.

contends that information relating to Matusoff's and the other Defendants' finances is relevant, because it is seeking to recover punitive damages on behalf of the prospective tenants who were aggrieved by the Defendants' alleged discriminatory practices. In order to avoid the possibility that the Defendants would be required to disclose information concerning their personal finances unnecessarily, bifurcating the trial of this litigation has been discussed. Under such an order of bifurcation, as contemplated by Defendants, the first trial would be devoted solely to liability. If the Plaintiff prevailed at that trial, discovery pertaining to the Defendants' personal finances would be permitted, following which a second trial would be held to resolve the issues of compensatory and punitive damages. The Plaintiff has opposed bifurcating this litigation by filing its Motion for a Single Trial and to Compel Discovery on Defendants' Finances (Doc. # 44).

■ As an initial matter, since the Plaintiff seeks to recover punitive damages on behalf of the aggrieved persons, evidence of the financial condition of the Defendants is highly relevant in this litigation. *See, e.g.,* *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 270, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (noting that, under federal law, evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded); *United States v. Big D Enterprises, Inc.,* 184 F.3d 924, 932 (8th Cir. 1999) (same). The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a *prima facie* showing that he is entitled to recover such damages. *See e.g.,* *Christy v. Ashkin,* 972 F.Supp. 253 (D.Vt. 1997); *Caruso v. The Coleman Co.,* 157 F.R.D. 344 (E.D.Pa.1994); *CEH, Inc. v. FV "Seafarer",* 153 F.R.D. 491 (D.R.I.1994), affirmed, 70 F.3d 694 (1st Cir.1995); *Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539 (N.D.Ind.1991); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149 (D.Kan.1990). This Court finds those decisions to be persuasive and will follow them. Therefore, the Plaintiff is entitled to discover evidence concerning the financial condition of the Defendants, without making a *prima facie* showing that it is entitled to recover punitive damages on behalf of the aggrieved persons. Of course, the Court could delay the disclosure of such information until absolutely necessary, by bifurcating this litigation. For reasons which follow, the Court declines to bifurcate this litigation in the manner suggested by Defendants (i.e., a liability trial followed by discovery concerning the Defendants' finances, if the Plaintiff prevails on liability, and, then, a damages trial); however, it will order separate trials on liability and damages, in a fashion it deems proper. The two trials will be heard by the same jury, and the damages trial will begin within a day or two of the completion of the liability trial, if one or more or all of the Defendants are found to be liable. Discovery on Defendants' finances will be ordered provided within thirty (30) days, subject to a properly worded protective order, in order that there will be no delay in the commencement of the second trial, if same be necessary.

The Court begins by setting forth the standards which must be applied in order to decide whether to order separate trials on liability and damages. Bifurcation is governed by Rule 42(b) of the Federal Rules of Civil Procedure, which provides:

> (b) *Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or thirdparty claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

In *Martin v. Heideman,* 106 F.3d 1308 (6th Cir.1997), the Sixth Circuit reiterated that "[b]ifurcation orders are reviewed for abuse of discretion, with the court required to con-

sider the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Id.* at 1311. *See also, In re Beverly Hills Fire Litigation,* 695 F.2d 207 (6th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983).

The Plaintiff argues that the Court should decline to order separate trials on liability and damages, because such trials would prejudice it and be inconvenient. Plaintiff also asserts that resolving this lawsuit with a single trial will not cause confusion to the jurors. According to Defendants, bifurcation is necessary in order to prevent the Defendants from suffering prejudice in the form of premature and, perhaps, unnecessary disclosure of information concerning their personal finances. In addition, Defendants contend that a single trial will confuse the jurors and that separate trials will promote judicial economy.

In *Brad Ragan, Inc. v. Shrader's, Inc.,* 89 F.R.D. 548 (S.D.Ohio 1981), this Court addressed and rejected the defendant's argument that liability and damages should be resolved in separate trials, in the manner suggested by Defendants, in order to avoid the prejudice which would flow from the premature and possibly unnecessary disclosure, through discovery, of its confidential business records which would be used to establish the plaintiff's remedy:

> Although the possibility of premature and unnecessary disclosure of Defendant's confidential business records is a serious problem, the Court does not understand how it may be reasonably resolved or avoided by Defendant's request for "serial" trials to the same jury unless (1) Defendant would have this Court absolutely preclude discovery of the subject records until after a liability verdict is rendered, and (2) then proceed to order a continuance of the damage trial for an extended and indeterminate period of time, while the parties exchange discoverable documents, examine same, perhaps conduct necessary deposi-

tions concerning them, and otherwise commence and complete preparation of a damage case and defense, (3) all while the same jury sits idly by and forgets relevant "overlapping" damage evidence presented at the liability trial. Without any understanding of the degree of confidentiality of the subject records, or the degree of protection which such records deserve, this Court is reluctant to refer to them as justification for adopting the preceding scenario as a "convenient and nonprejudicial" procedure to be followed in this case.

*Id.* at 550–51. Based upon that reasoning, the Court concludes that separate trials in this litigation on liability and damages, in the manner suggested by Defendants, would be prejudicial to the Plaintiff. Bifurcating this litigation in the manner suggested by Defendants could result in the Plaintiff being required either to prove punitive damages to a different jury than the one which had found the Defendants liable, or to seek such damages from the same jury, after it had been away from the trial for a number of weeks (or months), while the parties conducted discovery on the financial condition of the Defendants.

Unless the trial of this litigation is bifurcated, Defendants would have unnecessarily disclosed their personal financial information, if the jury finds them not liable. However, any harm to the Defendants, which would flow from the unnecessary disclosure of information concerning their finances,[4] can be minimized through a protective order which limits the disclosure of that information to Plaintiff's counsel and support staff actually assisting in the preparation of this litigation. In addition, such a protective order could require that the Plaintiff return all documents concerning Defendants' financial condition, at the conclusion of this lawsuit.

Should the Defendants be found not liable to any one or more of the 41 allegedly aggrieved persons, bifurcation will allow the jury in the second trial to concentrate on a more limited universe of aggrieved persons

---

4. The Defendants also suggest that they want to avoid premature disclosure of such information. This Court cannot discern how the Defendants would suffer prejudice if they were required to disclose information regarding their finances a number of months early. Therefore, the Court limits its discussion to unnecessary disclosure.

when awarding damages and, thus, to avoid possible confusion.

In sum, it is possible that Defendants will be required to disclose information concerning their financial condition unnecessarily, if this lawsuit is not resolved in the manner they suggest. However, any prejudice which would result from such disclosure is outweighed by the prejudice to the Plaintiff, the inconvenience to the witnesses and the waste of judicial resources which would flow from bifurcating this litigation in that manner. The Court believes that its suggested method of bifurcation will reduce all of the above consequences to a minimum.

A different manner of bifurcation than that proposed by Defendants will help prevent jury confusion, while not inconveniencing and prejudicing the parties or wasting scarce judicial resources. In addition, resolving liability and damages in separate trials, in the manner as ordered by the Court, will avoid the possibility of prejudice that could result from the introduction of evidence (such as the financial condition of the Defendants) which, although relevant on the issue of punitive damages, is irrelevant on liability. In addition, scheduling the damages trial to commence immediately following the completion of the liability phase, with the same jury, will avoid the alternative pitfalls presented by Defendants' proposed method of bifurcation, to wit: either empaneling a second jury to hear the damages trial, or risking that the original jury would forget some of the evidence presented at the liability phase, during the hiatus between the two trials.

Accordingly, the Court overrules the branch of the Plaintiff's Motion for a Single Trial and to Compel Discovery on Defendants' Finances (Doc. # 44), with which it requests a single trial, although the Court has not adopted Defendants' proposed manner of bifurcation. The Court also overrules the branch of that motion, seeking an order from the Court compelling discovery on the Defendants' finances, since the Plaintiff has not submitted actual discovery requests for which it needs any such order from the Court. That said, the Plaintiff is entitled to reasonable discovery regarding the Defendants' financial condition. However, that dis-covery should be conducted only in accordance with a protective order which limits the disclosure of such information to Plaintiff's counsel and necessary support staff, and which requires the return of documents and other financial information at the conclusion of this litigation. Defendants' counsel will submit a draft of a suggested protective order to Plaintiff within ten (10) days from date.