Petition for Writ of Mandamus Conditionally Granted,
in Part, and Denied, in Part, and Majority and Concurring Opinions filed
October 20, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00123-CV

____________

 

IN RE MARK A. JACOBS, M.D., DEBRA C. GUNN, M.D., and
OBSTETRICAL AND GYNECOLOGIST ASSOCIATES, P.A., Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

M A J O R
I T Y  O P I N I O N

In this original proceeding, the relators,
Mark A. Jacobs, M.D., Debra C. Gunn, M.D., and Obstetrical and Gynecologist
Associates, P.A., seek a writ of mandamus ordering the Honorable Mike Wood,
presiding judge of Probate Court No. 2 of Harris County, to set aside his two
orders of January 23, 2009Cone compelling the deposition of Dr. Jacobs and one
compelling net-worth discovery for the past two yearsCand his order of January 30, 2009,
clarifying the two January 23 orders.  We conditionally grant the petition in
part and deny it in part.  

 








                                                                             I

Real parties in interest, Andre McCoy, Individually and as
Permanent Guardian of Shannon Miles McCoy, an Incapacitated Person (the AMcCoys@), have sued the relators and others[1]
for negligence and gross negligence in providing medical care and treatment to
Shannon while she was an obstetrical patient at Woman=s Hospital of Texas from September
13, 2004 to September 14, 2004.  On November 16, 2007, the McCoys served the
relators with requests for discovery of net-worth information.  When the
relators objected to the requests for production, the McCoys filed a motion to
compel discovery.  

On January 23, 2009, the trial court held a hearing and signed
an order directing the McCoys to amend their pleadings to provide more specific
allegations of gross negligence against the relators following the completion
of the depositions of Dr. Jacobs and Dr. Gunn.  Subject to the filing of a
sufficient pleading as to gross negligence, the trial court further ordered the
relators to produce Athe actual financial statements they have provided to a
lender within the past two (2) years that identifies the assets and liabilities
of each Defendant.@  Alternatively, if the relators had not submitted any such
financial statement to a lender within the two years preceding the date of the
order, the court ordered each relator to:

(i)  Produce an affidavit swearing that no such
financial statement has actually been submitted to a lender in the past two (2)
years; and

(ii)  Produce an
affidavit under oath in the format of what would have been provided to a lender
as to net worth.








The order directed that the relators produce such net-worth information
no later than thirty days after the McCoys sufficiently pleaded gross
negligence.  In the order, Judge Wood also prohibited the McCoys from seeking
to compel any additional responses to their outstanding net-worth discovery
requests, and announced that any net-worth information provided to the McCoys
would be Asafeguarded by a protective order.@  On January 23, Judge Wood signed
another order granting the McCoys= motion to compel the deposition of
Dr. Jacobs, and directed that the deposition may not exceed three hours on the
record.  

On January 26, the relators filed a motion to clarify the
order regarding the discoverability of net worth.  The relators stated they did
not understand when to produce the net-worth information to comply with the
order and requested the trial court to so specify.  Also, the relators
requested a written order on what net-worth matters, if any, the McCoys would
be allowed to cover during the depositions of Dr. Jacobs and Dr. Gunn.  

On January 30, the trial court signed an order clarifying its
prior orders regarding the discoverability of net-worth information.  The trial
court directed the relators to produce the information by February 6, 2009, and
ruled that the McCoys would be permitted to depose Dr. Gunn and Dr. Jacobs
about their net worth.  

In their petition, the relators argue that the trial court
abused its discretion with respect to the orders of January 23 and 30 by
directing the relators to (1) produce net-worth information for the past two
years in the form of actual financial statements they have provided to lenders;
(2) create a net-worth document in the format of what would have been provided
to a lender; and (3) present Dr. Jacobs and Dr. Gunn for deposition regarding
their net worth without any temporal or subject-matter limitations.  The
relators further assert they have no adequate remedy by appeal because their
rights to due process and privacy are in jeopardy of being permanently lost or
compromised.  

                                                                             II








To be entitled to the extraordinary relief of a writ of
mandamus, the relator must show that the trial court clearly abused its
discretion and he has no adequate remedy by appeal.  In re Team Rocket, L.P.,
256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding).  The party resisting
discovery bears the heavy burden of establishing an abuse of discretion and an
inadequate remedy by appeal.  In re CSX Corp., 124 S.W.3d 149, 151 (Tex.
2003) (orig. proceeding) (per curiam). A trial court abuses its discretion if
it reaches a decision so arbitrary and unreasonable as to constitute a clear
and prejudicial error of law, or if it clearly fails to correctly analyze or
apply the law.  In re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382
(Tex. 2005) (orig. proceeding) (per curiam); Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). 








Whether a clear abuse of discretion can be adequately
remedied by appeal depends on a careful analysis of costs and benefits of
interlocutory review.  In re McAllen Med. Ctr., Inc., 275 S.W.3d 458,
464 (Tex. 2008) (orig. proceeding).  Because this balance depends heavily on
circumstances, it must be guided by analysis of principles rather than simple
rules that treat cases as categories.  Id.  AMandamus review of significant
rulings in exceptional cases may be essential to preserve important substantive
and procedural rights from impairment or loss, allow the appellate courts to
give needed and helpful direction to the law that would otherwise prove elusive
in appeals from final judgments, and spare private parties and the public the
time and money utterly wasted enduring eventual reversal of improperly
conducted proceedings.@  In re Prudential Ins. Co. of Am., 148 S.W.3d 124,
136 (Tex. 2004) (orig. proceeding); see also In re Columbia Med. Ctr. of Las
Colinas, Subsidiary, L.P., 290 S.W.3d 204, 207 (Tex. 2009) (orig.
proceeding) (AUsed selectively, mandamus can >correct clear errors in exceptional
cases and afford appropriate guidance to the law without the disruption and
burden of interlocutory appeal.=@) (quoting In re Prudential,
148 S.W.3d at 138).  Thus, in determining whether appeal is an adequate remedy,
we consider whether the benefits of mandamus review outweigh the detriments.  In
re BP Prods. N. Am., Inc., 244 S.W.3d 840, 845 (Tex. 2008) (orig.
proceeding).  Appeal is not an adequate remedy when the appellate court would
not be able to cure the trial court=s discovery error.  In re Dana
Corp., 138 S.W.3d 298, 301 (Tex. 2004) (per curiam) (orig. proceeding); In
re Kuntz, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding).  

                                                                             A

The relators assert the trial court abused its discretion by
ordering them to produce their net-worth information to the McCoys.  A
defendant=s net worth is relevant in a suit involving exemplary damages.  Lunsford
v. Morris, 746 S.W.2d 471, 473 (Tex. 1988) (orig. proceeding), overruled
on other grounds, Walker, 827 S.W.2d at 842; Miller v. O=Neill, 775 S.W.2d 56, 58 (Tex. App.CHouston [1st Dist.] 1989, orig.
proceeding).  Therefore, in cases where punitive or exemplary damages may be
awarded, parties may discover and offer evidence of a defendant=s net worth.  Lunsford, 746
S.W.2d at 473.  Generally, in cases concerning the production of financial
records, the burden rests upon the party seeking to prevent production.  In
re Brewer Leasing, Inc., 255 S.W.3d 708, 712 (Tex. App.CHouston [1st Dist.] 2008, orig.
proceeding [mand. denied]); In re Patel, 218 S.W.3d 911, 916 (Tex. App.CCorpus Christi 2007, orig.
proceeding).  








The relators argue the McCoys are not entitled to discovery
on net worth until they have established a prima facie case of gross
negligence.  However, the Texas Supreme Court has expressly rejected this
contention.  See Lunsford, 746 S.W.2d at 473 (rejecting requirement of
prima facie showing because A[o]ur rules of civil procedure and evidence do not require
similar practices before net worth may be discovered@).[2] 
Therefore, under Texas law, a party seeking discovery of net-worth information
need not satisfy any evidentiary prerequisite, such as making a prima facie
showing of entitlement to punitive damages, before discovery of net worth is
permitted.  In re House of Yahweh, 266 S.W.3d 668, 673 (Tex. App.CEastland 2008, orig. proceeding); In
re Garth, 214 S.W.3d 190, 192 (Tex. App.CBeaumont 2007, orig. proceeding
[mand. dism=d); In re W. Star Trucks US, Inc., 112 S.W.3d 756, 763 (Tex. App.CEastland 2003, orig. proceeding); Al
Parker Buick Co. v. Touchy, 788 S.W.2d 129, 131 (Tex. App.CHouston [1st Dist.] 1990, orig.
proceeding).  








The relators acknowledge the Texas Supreme Court=s express holding in Lunsford,
but argue that we should follow other jurisdictions that require a plaintiff to
demonstrate a factual basis for punitive damages before being allowed to do
net-worth discovery.[3]  Even though Lunsford
is over twenty years old, the Texas Supreme Court has not revisited this issue.[4] 
As an intermediate court of appeals, we are bound by the supreme court=s ruling in Lunsford and,
therefore, we decline the relators= invitation.  See Dallas Area
Rapid Transit v. Amalgamated Transit Union Local No. 1338, 273 S.W.3d 659,
666 (Tex. 2008), cert. denied, __ U.S. __, 129 S. Ct. 2767 (2009) (AIt is fundamental to the very
structure of our appellate system that this Court=s decisions be binding on the lower
courts.@); Lubbock County, Tex. v. Trammel=s Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002) (AIt is not the function of a court of
appeals to abrogate or modify established precedent. . . . That function lies
solely with this Court.@).  In accordance with Lunsford, the McCoys are not
required to make a prima facie case, or any other evidentiary showing, of
entitlement to punitive damages before seeking discovery of the relators= net-worth information. 

                                                                             B

The relators also argue evidence of their net worth is not
relevant because the McCoys have not alleged sufficient facts to support their
claim of gross negligence under section 41.001(11) of the Texas Civil Practices
and Remedies Code.  Section 41.001(11) defines Agross negligence@:

(11) AGross
negligence@ means an act or omission:

(A) which when viewed objectively from the
standpoint of the actor at the time of its occurrence involves an extreme
degree of risk, considering the probability and magnitude of the potential harm
to others; and

(B) of
which the actor has actual, subjective awareness of the risk involved, but
nevertheless proceeds with conscious indifference to the rights, safety, or
welfare of others.








Id. 

The McCoys allege Dr. Jacobs and Dr. Gunn knowingly
failed to:  (1) adequately and appropriately treat Shannon=s disseminated intravascular
coagulopathy (ADIC@)[5]; (2)
appreciate the severity of Shannon=s coagulopathy in light of abnormal
lab values indicating that she was actively bleeding and suffering from DIC;
(3) aggressively treat Shannon=s DIC with adequate blood products and blood-volume
replacement; and (4) repeatedly order appropriate coagulation profiles and to
serially re-check Shannon=s blood work or to monitor and evaluate her clotting factors[6]
to determine how well, or how poorly, she was responding to treatment.  

The McCoys further allege Dr. Jacobs knowingly failed
to:  (1) verify that his orders for blood-volume replacement were being carried
out and Shannon was being administered blood products as ordered; and (2)
appropriately and aggressively manage Shannon=s DIC from the outset of her
admission by ordering and administering additional units of fresh frozen plasma
to increase Shannon=s blood volume and to correct her consumptive coagulopathy
before the delivery of her baby.  








The McCoys also allege Dr. Gunn knowingly failed to: 
(1) appreciate that Shannon=s DIC was depleting and consuming her clotting factors and
that if these clotting factors were not replaced through aggressive
blood-volume replacement and clotting-factor replacement, Shannon=s blood would not be able to
coagulate effectively at the time she delivered her baby; (2) recognize and
appreciate that Dr. Jacobs had undertreated Shannon; (3) recognize, appreciate,
and appropriately respond to Shannon=s tachycardia on September 14, 2004,
by more aggressively treating her DIC; (4) order Laisix (a diuretic medication
that increases urine output) for Shannon, even though she knew that Shannon was
suffering from DIC and actively bleeding, and did not need to be administered a
diuretic medication; (5) recognize, appreciate, and properly respond to the
fact that Shannon=s condition was deteriorating (as evidenced by her
tachycardia (rapid heartbeat) and urine output), and that she was developing
hypovolemic shock (shock caused by reduction in blood volume); and (6)
recognize that she was not qualified to treat and manage Shannon=s DIC and to request the help of a
more specialized physician to treat and manage Shannon=s DIC. 

Finally, the McCoys allege the conduct of Dr. Jacobs and Dr. Gunn,
when viewed objectively from their standpoint at the time of the occurrence,
involved an extreme degree of risk, considering the probability and magnitude
of the potential harm to others.  The McCoys further allege Dr. Jacobs and Dr.
Gunn had actual, subjective awareness of the risk involved, but nevertheless
proceeded with conscious indifference to Shannon=s rights, safety, or welfare.  








In response to the McCoys= gross-negligence allegations, the
relators argue that merely adding the word Aknowingly@ to existing allegations of
negligence is not enough.  Texas follows the Afair notice@ standard for pleadings, which looks
to whether the opposing party can ascertain from the pleadings the nature and
basic issues of the controversy and the type of evidence that might be relevant
to the controversy.  Low v. Henry, 221 S.W.3d 609, 612 (Tex. 2007); Horizon/CMS
Healthcare Corp. of Am. v. Auld, 34 S.W.3d 887, 896 (Tex. 2000).  A>A petition is sufficient if it gives
fair and adequate notice of the facts upon which the pleader bases his claim. 
The purpose of this rule is to give the opposing party information sufficient
to enable him to prepare a defense.=@  Horizon/CMS Healthcare, 34
S.W.3d at 897 (quoting Roark v. Allen, 633 S.W.2d 804, 810 (Tex.
1982)).  Exemplary damages are special damages that must be supported by
express allegations of willfulness, malice, or gross negligence that go beyond
the allegations necessary to recover compensatory damages.  Al Parker Buick
Co., 788 S.W.2d at 130.  Texas law requires a plaintiff seeking production
of net worth information to A>allege facts showing that relator is
liable for punitive damages.=@  Delgado v. Kitzman, 793
S.W.2d 332, 333 Tex. App.CHouston [1st Dist.] 1990, orig. proceeding) (quoting Al
Parker Buick Co., 788 S.W.2d at 131).  

Under Texas= basic pleading requirements, the McCoys= live pleadings sufficiently allege
specific facts supporting gross negligence and invoke the objective and
subjective standards as set forth in section 41.001(11).[7] 
See Tex. Civ. Prac. & Rem. Code Ann.  Therefore, we conclude the
McCoys have pleaded facts sufficient for purposes of showing they are entitled
to discovery of net-worth information from the relators.  See In re Garth,
214 S.W.3d at 192 (holding plaintiff=s pleadings were sufficient to notify
defendants that she sought to hold them liable for punitive damages through
conspiracy theory); In re W. Star Trucks US, Inc., 112 S.W.3d at 763B64 (holding allegations in petition
that defendant had engaged in fraudulent and malicious conduct were sufficient
to permit discovery of net worth); Delgado, 793 S.W.2d at 333 (holding
plaintiff=s pleading alleging defendant was Aconsciously indifferent@ to safety of others was sufficient
to entitle plaintiff to discovery of net worth information).[8]









                                                                             C

The relators also contend the trial court=s order directing them to provide
net-worth information for the past two years is overly broad and unduly
burdensome because it goes beyond what is necessary to demonstrate their
respective current net worths.  Discovery is limited to matters relevant
to the case.  Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 814 (Tex. 1995)
(orig. proceeding) (per curiam); see also Tex. R. Civ. P. 192 cmt. 1 (AWhile the scope of discovery is quite
broad, it is nevertheless confined by the subject matter of the case and
reasonable expectations of obtaining information that will aid resolution of
the dispute.@).  A party=s requests must show a reasonable expectation of obtaining
information that will aid in the resolution of the dispute.  In re CSX Corp.,
124 S.W.3d at 152.  Therefore, discovery requests must be reasonably tailored
to include only matters relevant to the case.  In re Am. Optical Corp.,
988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam).  The Texas
Supreme Court has repeatedly admonished that discovery may not be used as a
fishing expedition.  K Mart Corp. v. Sanderson, 937 S.W.2d 429, 431
(Tex. 1996) (orig. proceeding) (per curiam); Dillard Dep=t Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex. 1995)
(orig. proceeding) (per curiam); Texaco, Inc., 898 S.W.2d at 815.  








The scope of discovery is a matter of trial-court
discretion.  In re CSX Corp., 124 S.W.3d at 152.  However, a trial court
abuses its discretion when it compels overly broad discovery.  In re Graco
Children=s Prods., Inc., 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per
curiam); Dillard Dep=t Stores, Inc., 909 S.W.2d at 492.  AA central question in determining
overbreadth is whether the request could have been more narrowly tailored to
avoid including tenuous information and still obtain the necessary information.@  In re CSX Corp., 124 S.W.3d
at 153.  Overbroad requests encompass time periods or activities beyond those
at issue in the caseCin other words, matters of questionable relevance.  In re
Alford Chevrolet-Geo, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (orig.
proceeding).  








The McCoys sought five years= worth of financial information from
the relators.  The trial court narrowed the scope of discovery to two years= worth.  But we do not believe the
trial court sufficiently narrowed the scope of production because only the
relators= current[9]
net worth is relevant.  See In re House of Yahweh, 266 S.W.3d at 673
(holding trial court erred in failing to limit discovery to relators= current balance sheets because
earlier balance sheets would not be relevant to relators= current net worth).[10] 
Therefore, we conclude the trial court abused its discretion by ordering the
relators to produce net-worth information beyond the relators= current net worth.  See In re
Allstate County Mut. Ins. Co., 227 S.W.3d 667, 669 (Tex. 2007) (orig.
proceeding) (per curiam) (holding trial court=s order was abuse of discretion
because it did not limit discovery requests which were overbroad as to time and
scope).  Moreover, the relators do not have an adequate remedy by appeal from
the production of their net worth from previous years.  See In re Weekley
Homes, L.P., No. 08-0836, 2009 WL 2666774, at *11 (Tex. Aug. 28, 2009)
(orig. proceeding) (AInstrusive discovery measures . . . require at a minimum,
that the benefits of the discovery measure outweigh the burden imposed upon the
discovered party.@); In re CSX Corp., 124 S.W.3d at 153 (holding relator
lacked adequate remedy by appeal where discovery order compelled production of Apatently irrelevant@ documents); Tilton v. Marshall,
925 S.W.2d 672, 683 (Tex. 1996) (orig. proceeding) (op. on reh=g) (A>[w]here . . . discovery order imposes
a burden on the producing party far out of proportion to any benefit that may
obtain to the requesting party,=@ mandamus relief may be justified)
(quoting Walker, 827 S.W.2d at 843). 

                                                                             D

The relators also complain about the trial court=s order requiring Dr. Jacobs and Dr.
Gunn to answer questions about their net worth at their depositions.  Allowing
such inquiries without any limitations as to time or subject matter, the
relators argue, is overly broad and burdensome.  See In re Alford
Chevrolet-Geo, 997 S.W.2d at 180 n.1 (explaining overbroad requests
encompass time periods or activities beyond those at issue in case, i.e.,
matters of questionable relevance).  Further, the relators contend that
answering deposition questions about information they already have provided in
written discovery responses would be unnecessarily cumulative.  We address this
issue by observing that we are concerned not only with determining the
appropriate scope of discovery of the relators= net worth under Lunsford, but
also with employing the most efficient and least intrusive methods by which to
permit the McCoys to discover that information.  See Tex. R. Civ. P. 192
cmt. 1 (explaining scope of discovery is confined by subject matter of case and
reasonable expectations of obtaining information that will aid resolution of
dispute); In re Weekley Homes, L.P., 2009 WL 2666774, at *9 (A[T]rial courts should be mindful of
protecting sensitive information and utilize the least intrusive means
necessary to facilitate discovery.@).








Allowing litigants to delve without limitation into personal
finances not only raises serious privacy concerns, but also provides an
opportunity for Aneedless abuse and harrassment.@  Wal-Mart Stores, Inc. v.
Alexander, 868 S.W.2d 322, 331B32 (Tex. 1993) (Gonzalez, J.,
concurring).  In light of these concerns, we believe it is appropriate to limit
the scope of oral-deposition inquiry into net worth.  See Axelson, Inc. v.
McIlhany, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding) (explaining
scope of discovery is limited by legitimate interests of a party to avoid
overly broad requests, harassment, or disclosure of privileged information). 
Accordingly, with respect to net-worth discovery during the oral depositions of
Dr. Jacobs and Dr. Gunn, the McCoys are limited to asking each physician to
state (1) his or her current net worth, i.e., the amount of current total
assets less current total liabilities determined in accordance with generally
accepted accounting principles (AGAAP@),[11]
and (2) the facts and methods used to calculate what each physician alleges is
his or her current net worth.  Any questioning beyond these two narrow
inquiries shall be allowed only upon leave of the trial court after a showing
that the McCoys have reason to believe that the information provided was
incomplete or inaccurate.  See In re Prudential, 148 S.W.3d at 136
(explaining mandamus is appropriate in exceptional cases Ato give needed and helpful direction
to the law that would otherwise prove elusive in appeals from final judgments@).  And to the extent more specific
limitations are appropriate, such as on the amount of on-the-record deposition
time that may be devoted to questioning about net worth, we leave that to the
sound discretion of the trial court.  








                                                                             E

Finally, the relators assert the trial court abused its
discretion by ordering them to create and produce affidavits in a format of
what would have been provided to a lender as to their respective net worth. 
The trial court ordered the relators to produce Athe actual financial statements they
have provided to a lender within the past two-years.@  Alternatively, the trial court
directed the relators, if they had not submitted any such financial statements
to a lender within the preceding two years, to produce (1) an affidavit
swearing that no such financial statement has been submitted, and (2) an
affidavit in the form of what would have been provided to a lender as to net
worth.  It is well-settled that a party cannot be forced to create documents
that do not exist for the sole purpose of complying with a request for
production.[12]  Therefore,
the relators are not required to create affidavits in a format of what
would have been provided to a lender to comply with the McCoys= request for production.[13] 
Instead, the relators are required to produce in response to the McCoys= requests for production only
documents that already exist.  In keeping with our above-holding, any such
information is limited to the relators= respective current net worth, as
well as whatever other limitations the trial court has set forth or may yet
impose.

                                                                            III








We deny the relators= petition with regard to their
assertions that the McCoys are precluded from seeking discovery of information
of any net worth because Texas law requires a claimant first to make a prima
facie showing of entitlement to punitive damages and the McCoys have not
pleaded sufficient allegations of conduct entitling them to punitive damages.  

We conditionally grant the relators= petition with regard to the trial
court=s order of January 23, 2009,
requiring the relators to produce net-worth information for the past two
years.  The relators are required to produce only current net-worth
information.  Further, the relators are not required to create affidavits in a
format of what would have been provided to a lender, but are required only to
produce documents in response to the McCoys= request for production that already
exist.  The trial court is directed to modify that portion of its order
accordingly.  

We further conditionally grant the relators= petition with regard to the trial
court=s order of January 30, 2009,
permitting the questioning of Dr. Jacobs and Dr. Gunn about their respective
current net worth.  Specifically, the McCoys are limited to asking each
physician to (1) state his or her current net worth, i.e., the amount of
current total assets less current total liabilities, and (2) the facts and
methods used to calculate what each physician alleges is his or her current net
worth.  Moreover, any questioning beyond these two narrow inquiries shall be
allowed only upon leave of the trial court after a showing that the McCoys have
reason to believe that the information provided was incomplete or inaccurate. 
The trial court is directed to modify that portion of its order accordingly,
and is free to otherwise impose whatever other limitations it determines, in
its discretion, to be appropriate.  

We lift our stays issued on February
4, 2009, and March 6, 2009.  The writ will issue only if the trial court fails
to act in accordance with this opinion.  

 

 

 

/s/        Jeffrey V. Brown

Justice

 

Panel
consists of Justices Brown, Boyce, and Sullivan (Sullivan, J., concurring).









[1]  The other
defendants are Woman=s
Hospital of Texas, Inc., CHCA Woman=s
Hospital, L.P. d/b/a Woman=s
Hospital of Texas, Houston Woman=s
Hospital Partner, L.L.C., and James A. Collins, M.D.  





[2]  We note
other jurisdictions require a prima facie showing of entitlement to recover
punitive damages prior to conducting discovery on a defendant=s financial status.  See,
e.g., Iowa Code Ann. '
668A.1 (1998); Larriva v. Montiel, 691 P.2d 735, 738 (Ariz. Ct. App.
1984); Curtis v. Partain, 614 S.W.2d 671, 674 (Ark. 1981), overruled
on other grounds, Lupo v. Linebarger, 855 S.W.2d 293 (Ark. 1993); Herman
v. Sunshine Chem. Specialties, Inc., 627 A.2d 1081, 1089 (N.J. 1993); Mark
v. Congregation Mishkon Tefiloh, 745A.2d 777, 780 (R.I. 2000); Cramer v.
Powder River Coal, L.L.C., 204 P.3d 974, 908 (Wyo. 2009).  However, most
federal courts do not require a plaintiff to make a prima facie showing of
entitlement to recover punitive damages before seeking pretrial discovery of
the defendant=s
financial information.  See, e.g., United States v. Matusoff Rental Co.,
204 F.R.D. 396, 399 (S.D. Ohio 2001) (stating overwhelming majority of federal
courts have concluded plaintiffs seeking punitive damages are entitled to
discover information on defendant=s
financial condition without making prima facie showing of entitlement to
recovery of such damages); CEH, Inc. v. FV ASeafarer@,
153 F.R.D. 491, 498 (D. R.I. 1994) (same); Mid Continent Cabinetry, Inc. v.
George Koch Sons, Inc., 130 F.R.D. 149, 151 (D. Kan. 1990) (same); Doe
v. Young, 2009 WL 440478, at *2 (E.D. Mo. Feb. 18, 2009) (same); Westbrook
v. Charlie Sciara & Son Produce Co., 2008 WL 839745, *2 (W.D. Tenn.
Mar. 27, 2008) (same); S. Cal. Hous. Rights Ctr. v. Krug, 2006 WL
4122148, at *4 (C.D. Cal. Sept. 5, 2006) (same). 





[3]  Other
jurisdictions require the plaintiff to establish a factual or evidentiary basis
to be entitled to discovery on a defendant=s
net worth.  See, e.g., Bryan v. Thos. Best & Sons, Inc., 453 A.2d
107, 108 (Del. Super. Ct. 1982); Globe Newspaper Co. v. King, 658 So.2d
518, 519 (Fla. 1995) (citing Fla. Stat. '
768.72); Smith v. Morris, Manning & Martin, L.L.P., 666 S.E.2d 683,
697 (Ga. Ct. App. 2008) (quoting Holman v. Burgess, 404 S.E.2d 144, 147
(Ga. 1991)); Breault v. Friedli, 610 S.W.2d 134, 139B40 (Tenn. Ct. App. 1980). 
At least two states go so far as to require the jury to return a verdict
awarding punitive damages prior to the plaintiff=s
conducting discovery on a defendant=s
financial status.  See, e.g., Ex parte Hsu, 707 So.2d 223, 225B26 (Ala. 1997) (citing Ala.
Code ' 6-11-23(b)); Prior
v. Brown Transp. Corp., 478 N.Y.S.2d 435, 436 (N.Y. App. Div. 1984)
(quoting Rupert v. Sellers, 368 N.Y.S.2d 904, 912 (N.Y. App. Div.
1975)).  





[4]  After Lunsford,
the supreme court established a bifurcated procedure for conducting trials
involving claims for punitive damages because of the Avery real potential@ that evidence of a defendant=s wealth will prejudice the
jury=s determination
of other disputed issues in tort cases.  Transp. Ins. Co. v. Moriel, 879
S.W.2d 10, 30 (Tex. 1994); see also Tex. Civ. Prac. & Rem. Code Ann.
' 41.009 (Vernon 2008)
(providing for bifurcated trial on claim for punitive damages). 





[5]  DIC Ais a rare, life-threatening
condition that prevents a person=s
blood from clotting normally.  It may cause excessive clotting (thrombosis) or
bleeding (hemorrhage) throughout the body and lead to shock, organ failure, and
death.@  WebMD, ADisseminated Intravascular
Coagulation (DIC),@
http://www.webmd.com/a-to-z-guides/disseminated-intravascular-coagulation-dic-topic-overview
(last visited July 7, 2009).  To treat DIC, A[t]ransfustions
of blood cells and other blood products may be necessary to replace blood that
has been lost through bleeding and to replace clotting factors used up by the
body.@  Id.





[6] AClotting factor@ refers to Aany of several plasma
components (as fibrinogen, prothrombin, and thromboplastin) that are involved
in the clotting of blood.@ 
Merriam-Webster OnLine, Aclotting
factor,@
http://merriam-webster.com/medical/clotting%20factors (last visited July 8,
2009).





[7]  Some states
do not permit a plaintiff to claim punitive damages in an original pleading,
but allow for the amendment of the plaintiff=s
pleadings to claim punitive damages, with the trial court=s permission, after
satisfying a requisite evidentiary showing.  See, e.g., Idaho Code Ann. ' 6-160.4(2) (2008); Minn.
Stat. Ann. ' 549.191
(2000); Or. Rev. Stat. Ann. '31.725(2)
(2007).  





[8]  The relators
argue, for the first time in their reply brief, that we should consider, not
only the pleadings, but also the requirement that a plaintiff must first
present expert opinion of the applicable standard of care, the alleged breach
of that standard, and the causal link to proceed on a health care liability
claim when determining whether net worth information is relevant.  We do not
consider this contention because it was not raised in the trial court or in the
relators= petition for
writ of mandamus.  See In re TCW Global Project Fund, II, Ltd., 274
S.W.3d 166, 171 (Tex. App.CHouston
[14th Dist.] 2008, orig. proceeding).  





[9] By Acurrent,@ we mean as of the time the
discovery is responded to, though net-worth information should be updated
through supplementationCas
should the information in any discovery responseCif
it changes materially between the service of the discovery response and the
time of trial.  See Tex. R. Civ. P. 193.5(a).





[10]  Other
courts have similarly held only current financial information is relevant to a
punitive damages claim.  See, e.g., Hightower v. Heritage Acad. of Tulsa,
Inc., 2008 WL 2937227, at *1 (N.D. Okla. July 29, 2008) (limiting discovery
of financial information to defendant=s
balance sheet for 2008 and net worth for 2008); McCloud v. Board of County
Comm=rs,
2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008) (limiting production of
defendant=s financial
information to most recent annual reports and current financial statements); Platcher
v. Health Prof=ls,
Ltd., 2007 WL 2772855, at *3 (C.D. Ill. Sept. 18, 2007) (AOnly Defendants= current assets and
liabilities are relevant to the punitive damages claim against them, . . .@); Fieldturf Int=l Group, Inc. v. Triexe
Mgmt. Group, Inc., 2004 WL 866494, at *3 (N.D. Ill. Apr. 16, 2004) (APlaintiffs= request for non-current
financial information is irrelevant to punitive damages determination.@).  





[11]  Although
section 41.011 provides that the fact finder shall consider evidence, if any,
of the defendant=s Anet worth,@ the statute does not
define that term.  Tex. Civ. Prac. & Rem. Code Ann. 41.011(a)(6); see
also Lunsford, 746 S.W.2d at 475 (Gonzalez, J., dissenting) (criticizing
court=s failure to
define Anet worth=).  The parties have not
cited, and we have not found, any cases defining the term Anet worth@ in connection with the
recovery of punitive damages.  However, Anet
worth,@ as used to
ascertain the amount of security required to suspend a judgment pending appeal,
has been defined as the difference between total assets and liabilities
determined in accordance with GAAP.  See Ramco Oil & Gas, Ltd. v.
Anglo-Dutch (Tenge) L.L.C., 171 S.W.3d 905, 914 (Tex. App.CHouston [14th Dist.] 2005,
no pet.) (defining Anet
worth@ as difference
between total assets and liabilities determined in accordance with GAAP after thorough
discussion of numerous authorities); see also Black=s Law Dictionary 1041 (6th
ed. 1990) (defining net worth as Athe
amount by which assets exceed liabilities@).






[12]  See In
re Guzman, 19 S.W.3d 522, 525 (Tex. App.CCorpus
Christi 2000, orig. proceeding); Smith v. O=Neal, 850 S.W.2d 797, 799 (Tex. App.CHouston [14th Dist.] 1993,
no writ); see also In re Colonial Pipeline Co., 968 S.W.2d at 942
(quoting McKinney v. Nat=l
Union Fire Ins. Co., 772 S.W.2d 72, 73 n.2 (Tex. 1989) (op. on reh=g)) (A>[T]his rule cannot be used to force a party
to make lists or reduce information to tangible form.=@). 






[13]  The
relators do not complain about the order in so far as it requires them to
produce an affidavit swearing that no such documents had been submitted to a
lender in the preceding two years.