**In re HOUSE OF YAHWEH, Yisrayl Hawkins, and Shandra Hawkins.**

No. 11–08–00220–CV.

Court of Appeals of Texas, Eastland.

Oct. 16, 2008.

David M. Walsh IV, William H. Chamblee, Kimberly E. Kizziah, Chamblee & Ryan, P.C., Dallas, TX, for appellant.

W.L. (Tres) Burke III, Daryl R. Hayes, Burnett & Burke, Abilene, David C. Hall, The Hall Law Firm, Sweetwater, TX, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

In this mandamus proceeding, House of Yahweh, Yisrayl Hawkins, and Shandra Hawkins challenge the trial court's order compelling them to produce their federal income tax returns and various financial records. We conclude that the trial court did not abuse its discretion by ordering the relators to produce documents showing their net worth. However, we also conclude that the trial court erred by ordering the relators to produce their tax returns and other documents that would not necessarily evidence their net worth. Therefore, we conditionally grant in part the writ of mandamus.

### Background

Real party in interest, Michael Wayne Johnson Jr., individually, as next friend of Allannah Johnson and Lisa Johnson, minors, and as representative of the estate of Lisa Johnson, brought this wrongful death and survival action against relators House of Yahweh, Yisrayl Hawkins, and Shandra Hawkins. Johnson also named Sherry Hawkins and Melody Boyd as defendants. Johnson made the following allegations, among others, in his petition: (1) that Lisa Johnson had been a religious member of House of Yahweh; (2) that Yisrayl Hawkins was the founder, leader, and instructor of House of Yahweh and its guidelines and rules; (3) that, pursuant to the teachings and beliefs of House of Yahweh, members must use the services of midwives, who are also members of House of Yahweh, in connection with childbirths; (4) that, on or about August 13, 2006, Lisa Johnson sought treatment from defendants; (5) that Shandra Hawkins, who was House of Yahweh's lead midwife, and Sherry Hawkins and Melody Boyd, who were also midwives, treated Lisa Johnson; (6) that, immediately after giving birth, Lisa Johnson began to experience medical complications and severe bleeding; (7) that defendants refused to provide Lisa Johnson with further treatment and prevented the use of any outside medical treatment; (8) that defendants committed negligence and gross negligence in connection with the care and treatment provided to Lisa Johnson; and (9) that Lisa Johnson died as a result of the negligent and grossly negligent care and treatment. Johnson further alleged that his damages were a direct and proximate result of the defendants' negligence and gross negligence. Johnson also made the following gross negligence allegations:

Defendants acted in a grossly negligent manner, in that their actions, when objectively viewed from their standpoint, involved an extreme degree of risk considering the probability and magnitude

of potential harm they posed to LISA JOHNSON. Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, or welfare of others. Accordingly, Plaintiff seeks actual and exemplary damages in an amount within the jurisdictional limits of the Court.

Johnson served a request for production on relators. Request Nos. 20–31 sought production of various types of financial information:

20. Documents reflecting all property owned by House of Yahweh, Yisrayl Hawkins, and Shandra Hawkins or in which Defendants have any interest.

21. Copies of all bank account statements for the years 2004, 2005, 2006, 2007 and 2008 through the present for all bank accounts, including but not limited to savings, checking, money market, Certificates of Deposit, and trust accounts which were owned by Defendants or for which Defendants, House of Yahweh, Yisrayl Hawkins or Shandra Hawkins have signatory authority or access to funds.

22. Copies of any and all statements reflecting stock interest or ownership in any company, corporation or entity by Defendants, House of Yahweh, Yisrayl Hawkins or Shandra Hawkins.

23. All record of tithes, made by House of Yahweh members for the years 2004, 2005, 2006, 2007, and 2008 through the present.

24. All records of any and all donations made to the House of Yahweh for the years 2004, 2005, 2006, 2007, and 2008 through the present.

25. A copy of Defendants' income tax returns for the years 2004 to the present.

26. All documents that evidence or reflect assets held by Defendants, House of Yahweh, Yisrayl Hawkins and Shandra Hawkins.

27. All documents that evidence or reflect Defendants, House of Yahweh, Yisrayl Hawkins and Shandra Hawkins['s] net worth.

28. A copy of Defendants, House of Yahweh, Yisrayl Hawkins and Shandra Hawkins['s] balance sheet(s) for the years 2004, 2005, 2006 and 2007.

29. Any and all of the following documents prepared internally by you, your operations staff or by an independent accountant for use in the management or administration of House of Yahweh, compiled on a periodic, interim, or annual basis at any time in 2004 through the present: (a) Prospectuses of Future Earnings; (b) Proforma or Forecasted Income Statements; (c) Proforma or Forecasted Balance Sheets; (d) Projected Financial Statements of any kind reflecting the financial expectations and goals of Defendant; (e) All Proforma Financial Statements required by SEC to be prepared by and issued for Defendant; (f) Budget Forecasts; and (g) Cash Forecasts.

30. All documents which contain evaluations, grades, assessments or analyses of financial performance by House of Yahweh during the years 2004 through the present.

31. Any and all internal correspondence relating to the profitability of House of Yahweh as well as the specific profitability of House of Yahweh in 2004 through the present. This request includes, but is not limited to, all internal correspondence from central office staff, accountants or analysts to management or from management to any employee. Further, this request includes any analyses, studies, reports or action directives which relate to any reduction of operational expenses by Defendant.

Relators lodged a number of objections to each of the above requests, including objections that the requests were overly broad, unduly burdensome, and sought the discovery of information that was not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

Johnson filed a motion to compel relators to respond to the requests for production. On July 2, 2008, the trial court held a hearing on the motion. The following exchange took place:

> [RELATORS' COUNSEL]: Now, we have [Request Nos.] 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, are all net-worth information for which my clients have a high sensitivity to, and we'll probably need to go through the objections one by one and get rulings on each of those, and I can—we can do it by a couple of categories, I think. There are a bunch of them that fall into just "give us a list of all of your assets, the property you own, the stocks you own," things like that. Then there's also tax returns and then there's what I would call tithing or other forms of gross sales or gross receipts records, which I'd say those are kind of the three main categories that there are other than your traditional documents that would show net worth.
>
> [THE COURT]: Mr. Burke [Johnson's counsel], have you alleged gross negligence?
>
> [JOHNSON'S COUNSEL]: We have, Your Honor.
>
> [THE COURT]: All right. I'm going to make it simple. I'm ordering you to respond to every one of those. I believe they're discoverable. Everything, 20 through 31 should be responded to fully.
>
> [RELATORS' COUNSEL]: Without hearing argument because I—
>
> [THE COURT]: I don't need to hear argument.
>
> [RELATORS' COUNSEL]: Okay.
>
> [THE COURT]: Gross has been alleged. They need to be produced. All right?
>
> [RELATORS' COUNSEL]: All right.

On July 28, 2008, the trial court entered an order on Johnson's motion to compel. In the order, the trial court overruled relators' objections to Request Nos. 20–31 and ordered the relators to fully respond to the requests "within thirty (30) days of the signing of this order." On August 12, 2008, relators filed their petition for writ of mandamus.[1] Relators seek mandamus relief to compel the trial court (1) to vacate its order compelling them to produce documents responsive to Request Nos. 20–31 and (2) to sustain their objections to Request Nos. 20–31.

### Issues Presented

Relators present three issues for review. In their first and second issues, they assert that the trial court erred (1) by compelling the production of tax returns and (2) by compelling the production of tithing and donation records. In their third issue, they contend that Johnson should have been required to establish a prima facie case of gross negligence before discovering net worth information and that, even if net worth information is discoverable, the trial court erred by compelling production of financial information without limitations or protections.

---

1. Relators also filed an emergency motion for temporary relief asking for a stay from the provisions of the July 28, 2008 order as it related to the production of financial information. We granted the motion and entered an order staying production of financial information under the July 28, 2008 order until further order of this court.

## Standard of Review

■ Mandamus relief is appropriate only if the trial court abused its discretion or violated a legal duty and if there is no adequate remedy at law. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex.2004) (orig.proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). A trial court's ruling that requires production beyond what our procedural rules permit is an abuse of discretion. *In re Dana Corp.*, 138 S.W.3d at 301. Mandamus will issue to correct a discovery order when the mandamus record establishes that the order constitutes a clear abuse of discretion and that there is no adequate remedy by appeal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding). Mandamus relief may be justified when the appellate court would not be able to cure the trial court's discovery error, such as when privileged information would be revealed. *Walker*, 827 S.W.2d at 843–44.

## Discovery of Net Worth Information

■ Johnson has alleged gross negligence claims against relators. Exemplary damages are recoverable for gross negligence claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(3) (Vernon 2008). Information regarding net worth is discoverable in cases in which exemplary damages may be awarded. *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex.1988) (orig.proceeding), *overruled on other grounds by Walker*, 827 S.W.2d at 842; *In re W. Star Trucks US, Inc.*, 112 S.W.3d 756, 763 (Tex.App.-Eastland 2003, orig. proceeding). A party seeking discovery of net worth information is not required to make a prima facie showing of a right to recover exemplary damages before discovery is permitted. *Lunsford*, 746 S.W.2d at 473; *Al Parker Buick Co. v. Touchy*, 788 S.W.2d 129, 131 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding). Therefore, we reject relators' contention that Johnson should be required to make a prima facie showing of a right to recover exemplary damages before obtaining discovery of their net worth. Based on *Lunsford* and its progeny, Johnson is entitled to discover net worth information based on the gross negligence allegations in his petition.

■ The trial court ordered relators to produce "[a]ll documents that evidence or reflect [relators'] net worth" in response to Request No. 27. The trial court did not abuse its discretion by ordering the production of documents that are relevant and material to prove relators' net worth. *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 712 (Tex.App.-Houston [1st Dist.] 2008, orig. proceeding). However, the use of the word "all" in Request No. 27 may make it overly broad because relators should only be required to produce documents sufficient to show their net worth. The trial court ordered relators to produce copies of their balance sheets for the years 2004, 2005, 2006, and 2007 in response to Request No. 28. To the extent that balance sheets show net worth information, they are relevant to the net worth issue and discoverable. *In re Garth*, 214 S.W.3d 190, 193–94 (Tex.App.-Beaumont 2007, orig. proceeding). However, the trial court erred in failing to limit discovery to relators' current balance sheet because earlier balance sheets would not be relevant to relators' current net worth.

■ A trial court abuses its discretion by ordering the production of financial records that would not necessarily evidence net worth. *In re Brewer Leasing, Inc.*, 255 S.W.3d at 712; *In re Garth*, 214 S.W.3d at 194. The trial court ordered relators to produce many categories of documents that are not necessarily reflective of net worth. These documents included property lists (Request No. 20),

bank statements (Request No. 21), stock ownership statements (Request No. 22), tithing records (Request No. 23), donation records (Request No. 24), income tax returns (Request No. 25), asset lists (Request No. 26), income and budget forecasts (Request No. 29), evaluations of financial performance (Request No. 30), and correspondence relating to House of Yahweh's profitability (Request No. 31). No evidence was offered at the hearing on Johnson's motion to compel. Therefore, the record contains no explanation as to how documents showing only the asset side of the net worth equation, such as tax returns, income lists, and property lists, as opposed to documents showing assets and liabilities, would be relevant to the discovery of relators' net worth. *See Chamberlain v. Cherry,* 818 S.W.2d 201, 205–06 (Tex.App.-Amarillo 1991, orig. proceeding) (While a tax return shows income for the year in which it is filed, it does not disclose the net worth of the taxpayer.). The trial court exceeded its authority and, therefore, abused its discretion in ordering relators to produce documents that are not necessarily reflective of net worth in response to Request Nos. 20–26 and 29–31. *In re Garth,* 214 S.W.3d at 194.

The trial court also abused its discretion in ordering relators to produce their income tax returns for another reason. A party seeking the discovery of income tax returns bears the burden of showing that the returns are relevant and material to the issues in the case. *Hall v. Lawlis,* 907 S.W.2d 493, 494 (Tex.1995) (orig.proceeding); *In re Brewer Leasing, Inc.,* 255 S.W.3d at 713–14; *In re Garth,* 214 S.W.3d at 193–94; *El Centro del Barrio, Inc. v. Barlow,* 894 S.W.2d 775, 779 (Tex.App.-San Antonio 1994, orig. proceeding). Tax returns are not material or relevant if the same information can be obtained from other sources, such as a fi-

nancial statement. *In re Brewer Leasing, Inc.,* 255 S.W.3d at 714; *In re Garth,* 214 S.W.3d at 193–94; *In re Sullivan,* 214 S.W.3d 622, 624–25 (Tex.App.-Austin 2006, orig. proceeding). Johnson did not show that tax returns were relevant or material to the net worth issue or that the information sought could not be obtained from some other source. Therefore, the trial court abused its discretion in compelling production of the tax returns for this additional reason.

We sustain relators' first and second issues. We overrule relators' third issue to the extent that relators contend that Johnson should be required to make a prima facie showing of a right to recover exemplary damages before discovery of net worth information is permitted. We sustain the remainder of relators' third issue.

### *This Court's Ruling*

We conditionally grant in part the relators' petition for writ of mandamus. The trial court is directed to vacate its July 28, 2008 order to the extent it compelled relators to produce documents responsive to Request Nos. 20–31. The trial court is further directed to enter a new order requiring relators to produce documents showing their net worth, including any current balance statements, in response to Request Nos. 27 and 28 and sustaining relators' objections to Request Nos. 20–26 and 29–31. With respect to the relief granted in this opinion, the writ of mandamus will issue only if the trial court fails to act by November 17, 2008.