**Opinion filed February 15, 2024**



## In The

# Eleventh Court of Appeals

_____

### No. 11-23-00282-CV

_____

## IN RE RICHARD SCHERER

**Original Mandamus Proceeding**

### O P I N I O N

In this mandamus proceeding, Relator, Richard Scherer, requests that we order the Honorable Leah G. Robertson, the presiding judge of the 385th District Court of Midland County, Texas, to vacate her order compelling him to respond to several written discovery requests propounded to him by Real Parties in Interest, Endeavor Energy Resources, L.P. and Endeavor Petroleum, LLC (hereinafter referred to collectively as Endeavor). For the reasons discussed below, we grant Relator's petition in part, and we deny it in part.

### I. *Factual and Procedural Background*

Scherer brought a suit for unlawful employment practices against Endeavor under the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LAB.

CODE ANN. § 21.001, *et. seq* (West 2021).  His suit alleges that, after the retirement of Joel Castello, Endeavor's Manager of Business Development & Reserves, Scherer assumed Castello's job responsibilities but was not promoted to Castello's position. Scherer, who is in his late fifties, was born in Iran.  He was a German citizen at birth, and his mother was Iranian.  Scherer alleges that Endeavor's elimination of the position formerly held by Castello constitutes discrimination based on both his age and his national origin.  *See* LAB. 21.051 ("An employer commits an unlawful employment practice if because of . . . national origin, or age the employer . . . limits, segregates, or classifies an employee . . . in a manner that would deprive or tend to deprive an individual of any employment opportunity.").  He further alleges that his claims of discrimination against Endeavor have resulted in the creation of a hostile work environment that limited his interaction with his co-workers and the resources that were available to him for the completion of his work.  The record suggests that Scherer's employment has now been terminated.

Scherer raises two issues in his petition, asserting that (1) the trial court abused its discretion by ordering the discovery of various forms of information and, (2) as a result, he is therefore entitled to mandamus relief.  Scherer's complaints concern two requests for written discovery: Endeavor's First Requests for Production to Scherer and Endeavor's First Set of Interrogatories to Scherer.  After Scherer objected to virtually all of the discovery sought in these requests, Endeavor filed a motion to compel, which was largely granted by the trial court.[1]

---

[1]Endeavor verbally withdrew several complaints asserted in its motion to compel at the hearing. The trial court granted Endeavor's motion with respect to the remaining discovery requests of which it complained, with one exception: it limited the scope of an interrogatory that inquired about Scherer's criminal history.

## II. *Mandamus – Standard of Review*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). With respect to the first requirement, a trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

"If the trial court issues an erroneous order requiring the production of privileged documents, the party claiming the privilege is left without an adequate appellate remedy." *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016); *see also In re Christus Santa Rosa Healthcare Corp.*, 617 S.W.3d 586, 591 (Tex. App.—San Antonio 2020, orig. proceeding). Likewise, "an order that compels overly broad discovery is an abuse of discretion for which mandamus is the proper remedy." *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 831 (Tex. 2022) (quoting *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009)).

## III. *Asserting Privileges*

Expansive discovery disputes in civil cases have become increasingly common during the last few decades, in part due to the evolution of "Rambo" litigation tactics and other overly aggressive practices, leading to considerable

consternation within the judiciary.[2] Such behavior has provided new meaning to the term "adversarial process." The case before us is no exception. Endeavor served a discovery request on Scherer that included seventy-one categories of requested documents. Scherer responded by serving a ninety-nine-page treatise in which he asserted well over two hundred objections to Endeavor's requests, along with an extensive series of supporting citations and footnotes.

"Parties and their attorneys are expected to cooperate in discovery and to make any agreements reasonably necessary for the efficient disposition of the case." TEX. R. CIV. P. 191.2. Toward that end, prior to filing a motion to compel or a similar discovery motion, the parties to the underlying litigation should confer and engage in reasonable efforts to resolve their disputes without the necessity of, and before seeking, trial court intervention. *Id.* In cases such as this one, which involve wide-ranging disputes that concern dozens of voluminous written discovery requests, it is particularly important for counsel, as the rule requires, to first confer and engage in reasonable discussions with each other in an attempt to resolve whatever differences exist between them, the result of which may effectuate the efficient administration of discovery. This requirement should not be ignored, nor should it be observed in a pro forma fashion.

While the parties in this case may claim to have satisfied their obligations to confer and cooperate in good faith, the record shows that they failed to follow at least one significant process that may have streamlined the resolution of their disputes: the process for the assertion of privilege. *Id.* R. 193.3. For that reason, we

---

[2]*See, e.g.*, *Dahl v. City of Huntington Beach*, 84 F.3d 363, 364 (9th Cir. 1996) (quoting *Krueger v. Pelican Prod. Corp.*, No. CIV-87-2385-A (W.D. Okla. Feb 24, 1989) (Hon. Wayne E. Alley) (order denying motion to dismiss) ("If there is a hell to which disputatious, uncivil, vituperative lawyers go, let it be one in which the damned are eternally locked in discovery disputes with other lawyers of equally repugnant attributes.").

believe it is important to review the necessary process for asserting privileges before we proceed further.

If a party believes that some of the materials that are responsive to a discovery request are subject to a privilege, the party may withhold the materials. *Id.* R. 193.3(a). However, in its response to the request, the withholding party must (1) indicate that materials have been withheld, (2) describe the request to which the material relates, and (3) describe the privilege asserted. *Id.* A statement asserting a privilege should not be made unless specific, responsive material is protected by the privilege. *Id.* R. 193, cmt. 3. The responding party may then submit a request to the withholding party and seek a privilege log, which describes the materials that are withheld and the privilege that applies to each withheld item or group of items. *Id.* R. 193.3(b).

It is improper to raise an *objection* to a discovery request on the grounds that it calls for the production of material that is privileged. *Id.* R. 193.2(f); *In re Monsanto Co.*, 998 S.W.2d 917, 924 (Tex. App.—Waco 1999, orig. proceeding); *see also In re Christus Health Se. Tex.*, 167 S.W.3d 596, 599 (Tex. App.—Beaumont 2005, orig. proceeding) ("Although St. Mary should not have objected on the basis of privilege, this was not fatal to its privilege assertion."). There is a significant distinction between raising objections and asserting privileges. However, a party that erroneously asserts an objection in that instance does not necessarily waive any applicable privilege. TEX. R. CIV. P. 193.2(f). Instead, the withholding party is under an obligation to comply with the procedures for withholding privileged documents once the error is brought to their attention. *Id.*

When Rule 193 is properly followed, a party requesting documents that may be privileged should then have a general idea about the nature of the documents, if any, that are the subject of the parties' dispute well before the matter is brought to

the trial court's attention. *See id.* R. 193.2(b). Access to this information will hopefully serve to narrow the scope of the parties' dispute. Additionally, the process may help the parties avoid a situation where judicial resources, not to mention the parties' time and expenses, are unnecessarily consumed and exhausted in hypothetical disputes over the existence of a privilege that, in reality, does not apply to any existing documents.

With the foregoing principles in mind, we now turn to the matters in dispute.

IV. *Disputed Discovery Requests*

A. *Income Tax Returns*

Endeavor's sixth request for production seeks "[a]ll federal and state income tax returns of [Scherer], including all schedules [and] W-2 and 1099 forms, for the years 2018 through the present."

Scherer objected to this request on the grounds that his income tax returns are "subject to a qualified privilege," but his response did not follow the procedure for asserting privileges as described in Rule 193.3(b). Likewise, there is no indication that Endeavor attempted to point out this error to Scherer or otherwise request that he comply with the correct procedure for asserting privileges. *See id.* R. 193.3.

It is well-settled that the discovery of federal income tax returns is treated differently from other financial information because federal income tax returns are private, and the protection of that privacy is determined to be of constitutional importance. *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962); *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding); *see also Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1992) ("Our opinion in this case is guided by our reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns."). Thus, the discovery of federal income tax returns is permissible only when they are both relevant and

material to the issues in the case. *Hall v. Lawlis*, 907 S.W.2d 493, 494 (Tex. 1995); *In re House of Yahweh*, 266 S.W.3d 668, 674 (Tex. App.—Eastland 2008, orig. proceeding). As we have said, "[t]ax returns are not material or relevant if the same information can be obtained from other sources, such as a financial statement." *House of Yahweh*, 266 S.W.3d at 674. Furthermore, unlike other forms of discovery, the burden is on the party seeking the discovery of the tax returns to show that they are both relevant and material. *Hall*, 907 S.W.2d at 495; *House of Yahweh*, 266 S.W.3d at 674; *Brewer Leasing*, 255 S.W.3d at 713–14; *El Centro del Barrio, Inc. v. Barlow*, 894 S.W.2d 775, 779 (Tex. App.—San Antonio 1994, no writ).

Endeavor maintains that it is entitled to discover Scherer's federal income tax returns because they are relevant to Scherer's claims for loss of compensation, as well as his efforts to mitigate damages. Endeavor also points out that Scherer has a "side consulting business" and that he has likely earned income from this business. In response, Scherer has indicated that he is willing to produce other documents that show the nature of his income, including any forms that are related to income that is reported on his income tax returns (e.g., any W-2, 1099, and K-1 forms).

Because Scherer has improperly *objected* to this request, rather than following the procedures described in Rule 193.3, the trial court did not abuse its discretion in overruling the "objection." *See* TEX. R. CIV. P. 193.2(f); *In re Monsanto Co.*, 998 S.W.2d at 924; *In re Christus Health Se. Tex.*, 167 S.W.3d at 599. However, by only objecting, Scherer has not waived his right to assert a qualified privilege. TEX. R. CIV. P. 193.2(f). As such, Scherer may still properly assert the necessary privilege(s) using the procedures described in Rule 193. Once he has done so, the parties can proceed to resolve any remaining disputes.

Additionally, the trial court and the parties should be mindful that, once any of the documents in dispute have been identified, Endeavor will carry the burden to

demonstrate that the production of other documents that would indicate Scherer's taxable income would be insufficient. *See Hall*, 907 S.W.2d at 495. Scherer's general claim for loss of compensation, as well as Endeavor's need for discovery that relates to the "side consulting business" do not satisfy that burden.[3]

B. *Medical/Mental Health Treatment Information*

Scherer maintains that the trial court has improperly ordered him to produce a list of medical providers in response to interrogatory no. 8 and to produce "medical records" in response to request for production nos. 7 and 24.

Under Rules 509 and 510 of the Texas Rules of Evidence, a patient such as Scherer may assert a privilege to refuse to disclose confidential communications that relate to their medical or mental health treatment, as well as the records that are generated by the patient's treating health care providers. TEX. R. EVID. 509(c), 510(b). These rules also contain a provision known as the patient-litigant exception, which applies when a party relies on the patient's "physical, mental, or emotional condition" as part of an asserted claim or defense. TEX. R. EVID. 509(e)(4), 510(d)(5). Even then, however, this exception is applicable only when the patient's "condition" plays a significant role in the claim or defense that is asserted. In *R.K. v. Ramirez*, the supreme court held that the patient-litigant exception is not applicable "if the patient's *condition* is merely an evidentiary or intermediate issue of fact, rather than an 'ultimate' issue for a claim or defense." 887 S.W.2d 836, 842 (Tex. 1994) (emphasis added). Likewise, it is not applicable "if the *condition* is merely tangential to a claim rather than 'central' to it." *Id.* (emphasis added).

---

[3]Endeavor also complains that Scherer has not produced other income-related documents during the period in which he was employed by Endeavor. However, Scherer does not complain about the trial court's order compelling him to produce other income-related documents, such as W-2s and 1099s. Therefore, we do not address or dispose of any ongoing disputes that may relate to the production of such documents.

"Courts applying *R.K.* have consistently found that a claim for mental anguish will not, standing alone, make a plaintiff's mental or emotional condition a part of their claim." *In re Whipple*, 373 S.W.3d 119, 123 (Tex. App.—San Antonio 2012, orig. proceeding); *In re Toyota Motor Corp.*, 191 S.W.3d 498, 502 (Tex. App.—Waco 2006, orig. proceeding) ("A claim for mental anguish or emotional distress will not, standing alone, make a plaintiff's mental or emotional condition a part of the plaintiff's claim."); *see also Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988) (orig. proceeding) (one's mental condition is not at issue merely because a party pleads for mental anguish damages). Thus, a "routine allegation of mental anguish does not place a party's mental condition in controversy." *Whipple*, 373 S.W.3d at 124; *see also In re Barnes*, 655 S.W.3d 658, 672 (Tex. App.—Dallas 2022, orig. proceeding) (a routine allegation of mental anguish in a personal injury case did not waive the privilege).

In this case, Endeavor has narrowly tailored its discovery requests for medical information. Interrogatory no. 8 asks Scherer to identify each health care provider that Scherer has consulted or that has treated Scherer "*as a result of the ailments [he] claim[s] to have suffered as a result of [Endeavor's] alleged conduct*" (emphasis added). Likewise, request for production no. 7 seeks "[d]ocuments which support your claim for damages," including "medical records and bills *reflecting the injuries or damages asserted*" (emphasis added). In the same way, request for production no. 24 requests the production of medical records that show the treatment for each "illness, disability, injury, ailment or pain, whether physical, psychological[,] or psychiatric" which Scherer claims "to have suffered *as a result of [Endeavor's] alleged conduct*" (emphasis added). Each request makes it clear that medical information is sought only if it is indicative of Scherer's treatment for conditions, if any, which he claims to have suffered as a result of Endeavor's

9

conduct. Thus, if Scherer is not asserting a claim here regarding a particular physical or mental condition for which he has received treatment, then no information could be sought or would need to be produced.

Scherer objected to interrogatory no. 8 on the grounds that it sought information in violation of Rules 509 and 510 of the Texas Rules of Evidence. He then indicated that he was amenable to producing a list of health care providers that he had seen "because of [Endeavor's] conduct," effectively acknowledging that he is required to identify providers whose treatment falls within the patient-litigant exception. However, even then, Scherer adds that he will only do so "if he intends to use any such person as a witness or use any such person's records as evidence." Based on this statement, and subject to his objections, Scherer responds to the interrogatory itself with the words "[n]ot applicable." The cumulative effect of this limitation and response is to create an ambiguity as to whether Scherer has received no treatment at all "as a result of the ailments [he] claim[s] to have suffered as a result of [Endeavor's] alleged conduct" or whether he is, in fact, making such a claim, and merely has no intention of presenting any medical witnesses at trial.

Scherer's response is insufficient in at least two respects. First, Scherer improperly objected to the interrogatory on the basis that a privilege applies. *See* TEX. R. CIV. P. 193.2(f). Second, Scherer arbitrarily limited his response to health care providers that he only intends to present as witnesses. Rules 509 and 510 do not limit the patient-litigant exception to the manner which Scherer advances here.

Given the conditional nature of Endeavor's request, and because Scherer improperly asserted an objection based on privilege, we conclude that the trial court did not abuse its discretion when it ordered Scherer to respond to interrogatory no. 8. However, on remand, both the trial court and the parties should be mindful that Scherer's answer of "[n]ot applicable" may be sufficient, if Scherer clearly indicates

10

that he is making no claim in this case that he has received any treatment as a result of a medical or mental health condition that would satisfy the patient-litigant exception. *See* TEX. R. EVID. 509(e)(4), 510(d)(5).

In responding to request for production nos. 7(f) and 24, Scherer again failed to follow the procedure for asserting privileges that is described in Rule 193.3(b). Instead, Scherer improperly objected to these requests on the grounds that they sought information that was protected by the physician-patient and mental-health-information privileges in Rules 509 and 510. There is also no indication that Endeavor requested compliance with Rule 193.3(b) in connection with these requests.

We likewise conclude that the trial court did not abuse its discretion when it overruled Scherer's improper objections to these requests. *See* TEX. R. CIV. P. 193.2(f). Additionally, as was the case with interrogatory no. 8, we construe these requests for production as seeking only those records that are discoverable under the patient-litigant exception. As such, we do not believe that the trial court abused its discretion when it ordered Scherer to respond to these requests. Again, however, we note that if Scherer unequivocally responds that he has received no treatment as a result of any physical or mental health conditions that are a result of Endeavor's conduct, he may respond to these requests by so indicating.[4]

C. *"Witness Interviews"*

Endeavor propounded three written discovery requests that relate to Scherer's communications with witnesses and/or to statements that were made by witnesses

---

[4]Endeavor's requests for production also included a request for Scherer to provide an executed "Authorization for Disclosure of Protected Health Information Psychotherapy Notes." Scherer complains that the trial court abused its discretion when it ordered him to produce such an authorization. We will address this complaint below, in connection with Scherer's argument that he should not be required to produce the requested authorizations.

either to him or to a member of his litigation team. Among other things, Scherer objected to these requests on the grounds that they sought "work product." The trial court overruled Scherer's objections and ordered him to respond to each of the items in question. In his petition for mandamus, Scherer maintains that the trial court abused its discretion because these requests seek documents that are protected by the work product privilege.

The Texas Rules of Civil Procedure no longer contain a blanket exemption from discovery that explicitly applies to "witness statements." *See* TEX. R. CIV. P. 192, cmt. 9. Indeed, all statements that are signed or otherwise adopted by a person with knowledge of relevant facts, as well as all such stenographic, mechanical, or electrical recordings of oral statements, are within the scope of permissible discovery, subject to the assertion of any relevant privilege, and certain other limitations, which are not applicable here. *Id.* R. 192.3(h); R. 192, cmt. 9.

For example, notes taken during a conversation or interview with a witness or a person with knowledge of relevant facts do not constitute a "witness statement" for purposes of Rule 192. *Id.* R. 192.3(h). Nevertheless, and regardless of whether they are properly understood to be "witness statements," such *notes* may still be subject to protection under the work product privilege (or conceivably some other applicable privilege). *See id.* R. 192.5; R. 192, cmt. 9. "Work product" is defined in relevant part as "material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives." *Id.* R. 192.5(a)(1). Thus, when claiming that material or information constitutes work product, a party is asserting a privilege under Rule 193. *Id.* R. 192.5(d).

Interrogatory no. 6 seeks the name of each "agent, servant, or employee" of Endeavor with which Scherer has communicated concerning the "subject matter of this lawsuit." It also seeks an indication of whether any such conversation was

12

verbal or written. However, it does not seek any information about the contents of such communications, nor does it require the disclosure of any mental impressions regarding such conversations, if any. Scherer did not provide a response to interrogatory no. 6, even in a limited form.

In his response to Endeavor's motion to compel, Scherer argued that, because it would require disclosing the names of any witnesses that were interviewed by Scherer or his attorneys in preparation for litigation or trial, interrogatory no. 6 necessarily sought the disclosure of mental impressions regarding which witnesses he or his attorneys consider to be important. While the interrogatory may result in the incidental disclosure of mental impressions regarding the relative importance of potential witnesses, not every conversation between Scherer and an employee, agent, or servant of Endeavor regarding Scherer's suit would necessarily indicate an effort to identify and interview "witnesses." As such, it is conceivable that Scherer has engaged in conversations with employees, agents, or servants of Endeavor that are not encompassed by or within the scope of his objection.

Furthermore, Scherer's use of an objection to assert a privilege is, again, improper under Rule 193.2(f), and Scherer does not argue in his petition for mandamus that the trial court abused its discretion when it granted any of the other objections to interrogatory no. 6. Therefore, we conclude that the trial court did not abuse its discretion when it overruled Scherer's "objection" to producing privileged information and ordered Scherer to respond to interrogatory no. 6.

On remand, Scherer is not prohibited from asserting the work product privilege in connection with interrogatory no. 6 if he utilizes the procedures in Rule 193.3. However, if he does so, he should be mindful that he should not assert the privilege unless there are one or more specific witness contacts to which the

privilege applies.[5] *See* TEX. R. CIV. P. 193, cmt. 3. He should also be prepared, on request, to provide a privilege log to opposing counsel so that any disputes over the production of the requested information can be properly addressed and possibly resolved. *Id.* R. 193.3(b).

Scherer also alleges that request for production nos. 8 and 9 seek information that constitutes work product. Request for production no. 8 seeks "[a]ny statements, whether written, typed, recorded, or otherwise that [Scherer] or any person on [his] behalf has taken or received from any current or former employee of [Endeavor], including [Scherer's] former co-workers and supervisors." Request for production no. 9 seeks documents that "reflect communications" between current or former employees of Endeavor, and which discuss or reference Scherer, his employment with Endeavor, or any other facts set out in his pleadings.

Again, Scherer improperly objected to each of these requests on the basis of the work product privilege, arguing that they "seem" to include "notes of witness interviews." Likewise, although Scherer lodged several other objections to these requests, Scherer's petition for mandamus does not argue that the trial court abused its discretion when it overruled such objections. As such, the trial court did not abuse its discretion in that regard. If Scherer has any "notes of witness interviews" that he seeks to withhold from discovery under the work product privilege, Scherer may assert the work product privilege and withhold production under Rule 193.3. Endeavor may then pursue appropriate relief based on the procedures outlined in the same rule.

---

[5]We do not comment on whether Scherer can be required to disclose the identity of witnesses that he or his attorneys have interviewed. Instead, we believe that such an issue is best resolved after the general nature of the alleged witness interview/statement dilemma has been disclosed pursuant to the procedures described in Rule 193.3. We do note, however, that a party must disclose the identity of any person that it intends to present as a witness at trial. *See* TEX. R. CIV. P. 192.3(d).

D. *Calculation of Non-Economic Damages*

In interrogatory no. 4, Endeavor sought a description of each element of damages sought by Scherer, along with the amount claimed by him for each element, and "the manner in which [Scherer] calculated the amounts claimed." Scherer complains that the trial court abused its discretion to the extent this request orders him to provide "calculations" of his non-economic damages.

Because they are a measure of non-pecuniary harm, non-economic damages are not amenable to calculation with "precise mathematical precision." *Anderson v. Durant*, 550 S.W.3d 605, 618 (Tex. 2018) (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 887 (Tex. 2017)). For that reason, our mandatory disclosure rules indicate that the parties should provide "the amount and any method of calculating *economic* damages" (emphasis added), but do not require a similar disclosure obligation for non-economic damages. TEX. R. CIV. P. 194.2(b). However, non-economic damages may sometimes be the subject of less-than-precise calculations. For example, when establishing a rational basis for the award of mental anguish, a party may offer evidence suggesting a quantifiable amount of damages. *Gregory v. Chohan*, 670 S.W.3d 546, 560–61 (Tex. 2023). In that instance, a party might ask a jury to consider "the potential financial consequences of severe emotional trauma." *Id.*

Endeavor's briefing seems to assume that, because non-economic damages must have a "rational basis," all such damages are subject to some form of calculation. *See id.* Although the distinction may not always be clear, we do not believe that all non-economic damages can necessarily be expressed in the form of verifiable calculations. On that basis, we conclude that the trial court abused its discretion when it ordered Scherer to provide calculations of his non-economic losses without qualification. On remand, the trial court may order Scherer to provide

15

calculations of his non-economic losses only to the extent that such calculations are verifiable and possible.

E. *E-mail and Social Media Accounts*

Interrogatory no. 7 contains the following request:

> List all email addresses you have used during the last five years and provide all web addresses for any on-line content with which you are associated, including, without limitation, social media websites (e.g., Facebook, Instagram, LinkedIn, Snapchat, TikTok).

Scherer maintains that this request exceeds the scope of permissible discovery. *See* TEX. R. CIV. P. 192.3(a).

Under Rule 192.3(a), a party is allowed to discover matters that are relevant to the subject matter of the litigation. Furthermore, "[i]t is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Thus, while the scope of discovery is broad, "it is nevertheless confined by the subject matter of the case and reasonable expectations of obtaining information that will aid [in the] resolution of the dispute." *Id.* R. 192, cmt. 1. For this reason, discovery requests must be "reasonably tailored" to seek the disclosure or production of only relevant matters. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 793 (Tex. 2021) (orig. proceeding) (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding)); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding); *In re Germania Select Ins. Co.*, No. 11-20-00176-CV, 2020 WL 5741595, at *2 (Tex. App.—Eastland Sept. 25, 2020, orig. proceeding) (mem. op.).

Based on these principles, requests for social media posts that are not limited in time or scope can be overly broad and therefore improper. *See In re Christus Health Se. Tex.*, 399 S.W.3d 343, 348 (Tex. App.—Beaumont 2013, orig. proceeding). Furthermore, requests for social media posts which are limited in time

16

or scope, but which bear no restriction as to the requested subject matter are properly denied. *In re Indeco Sales, Inc.*, No. 09-14-00405-CV, 2014 WL 5490943, at *2 (Tex. App.—Beaumont Oct. 30, 2014, orig. proceeding) (mem. op.) (the trial court reasonably concluded that a request was overly broad when it required a party to "produce every post, message or chat conversation authored, sent, or received by her, no matter how mundane or remote, regardless of the topic, content, or subject, includ[ing] everything anyone sent or posted to her account.").

Endeavor characterizes its request as merely seeking "a list of email addresses and social media accounts." This characterization is incorrect. Instead, the request seeks the "web addresses" for all online content with which Scherer is associated, including social media websites. That is, it effectively seeks a list of every web page and any piece of information generated by or associated with Scherer that has been posted within the last five years, without any limitation as to its scope or content. Among other things, it obligates Scherer and/or his attorneys to identify the uniform resource locator of every piece of social media content in which Scherer is "tagged," mentioned, or otherwise involved, no matter how remote such involvement may be. *See Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1188 (Fed. Cir. 2003) (a user accesses an individual web page by entering its uniform resource locator—or "URL"—in an internet browser). Under these circumstances, we conclude that the trial court abused its discretion when it ordered Scherer to respond to interrogatory no. 7 in its current form.

F. *Forms of Income*

Request for production no. 22 seeks "documents that reflect or evidence any or all income" earned by Scherer during the four-year period preceding the end of his employment. Endeavor listed several specific categories of documents that are included within this request. They included pension payments, disability income,

"insurance proceeds," inheritances, workers' compensation, and unemployment compensation. Scherer objected to this request on the grounds that it exceeds the scope of permissible discovery. *See* TEX. R. CIV. P. 192.3(a). However, he agreed to produce several income-related documents, including, among other things, various IRS forms that would show his sources of income, payroll documents showing post-termination income, and documents sufficient to show any unemployment benefits or workers' compensation benefits received.

An employee that asserts a claim under the TCHRA may recover back pay as a form of equitable relief. LAB. § 21.258. The measure of such damages is the amount of money the employee would have earned had they not been terminated, less the sum the employee did earn after termination. *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 57 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 271 (Tex. App.—Fort Worth 2004, no pet.); *Burlington Coat Factory Warehouse of El Paso, Inc. v. Flores*, 951 S.W.2d 542, 547 (Tex. App.—El Paso 1997, no writ). Likewise, the TCHRA provides that "[i]nterim earnings, workers' compensation benefits, and unemployment compensation benefits received operate to reduce the back pay otherwise allowable." LAB. § 21.258(c).

The measure of damages articulated in *Barousse*, *Littlejohn*, and *Flores*, as well as the Labor Code's description of allowable reductions, indicate that offsets are limited to *earned* income or forms of income that serve as a substitute for earned income during the claimant's periods of disability or unemployment. Back pay damages are not reduced or limited by other forms of income. Thus, for example, 401k benefits paid to a claimant cannot serve as the basis for an offset. *Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 563 (Tex. App.—Corpus Christi–Edinburg 1995, writ denied). Likewise, income received from inheritance, property and

18

casualty insurance payments, and pensions are not relevant to the measure of damages. *Cf. Littlejohn*, 141 S.W.3d at 271; *see* LAB. § 21.258(c).[6]

Although relevant documents were included within the scope of request for production no. 22, the request also sought documentation for unearned income, which is not relevant to the damage claims that have been asserted by Scherer. Likewise, Endeavor failed to demonstrate how the discovery of unearned income could otherwise lead to the discovery of admissible evidence. *See* TEX. R. CIV. P. 192.3(a). As such, the trial court abused its discretion when it ordered Scherer to produce documents in response to request for production no. 22.

G. *Documents "Supporting" Claims*

Endeavor also served a series of requests for production that asked Scherer to produce documents "support[ing]" or "substantiat[ing]" various claims that are set out in Scherer's pleadings. The requests at issue include the following:

> **Document Request 55**: Documents that support or otherwise substantiate your allegation that "Endeavor violated and is violating the TCHRA by discriminating against [Scherer] by using his age as a motivating factor in connection with compensation, terms, conditions, or privileges of employment."
>
> **Document Request 56**: Documents that support or otherwise substantiate your allegation that "Endeavor violated and is violating the TCHRA by limiting, segregating, or classifying [Scherer] for employment in a manner that tends to deprive [Scherer] of employment opportunities – or adversely effects [Scherer's] status as an employee."
>
> **Document Request 57**: Documents that support or otherwise substantiate your allegation that "Endeavor caused harm to [Scherer] and is continuing to cause harm to [Scherer]."

---

[6]Scherer argues that allowable offsets for back pay are necessarily limited to the three categories that are described in Section 21.258(c): interim earnings, workers' compensation, and unemployment benefits. We do not comment on whether forms of earned income that are outside the scope of these three categories limit the claimant's recovery of back pay.

**Document Request 58**: Documents that support or otherwise substantiate your allegation that "Endeavor violated and is violating the TCHRA by discriminating against [Scherer] by using [Scherer's] national origin as a motivating factor in connection with compensation, terms, conditions, or privileges of employment."

**Document Request 59**: Documents that support or otherwise substantiate your allegation that "Endeavor violated and is violating the TCHRA by limiting, segregating, or classifying [Scherer] for employment in a manner that tends to deprive [Scherer] of employment opportunities – or adversely affects [Scherer's] status as an employee."

**Document Request 60**: Documents that support or otherwise substantiate your allegation that "Endeavor caused harm to [Scherer]."

**Document Request 61**: Documents that support or otherwise substantiate your allegation that "Endeavor violated and is violating the TCHRA by retaliating or discriminating against [Scherer] for opposing a discriminatory practice, making or filing a charge of discrimination, assisting, or participating in any manner in an investigation or proceedings."

**Document Request 67**: Documents that support or otherwise substantiate your allegation that "Endeavor engaged in discriminatory and retaliatory practices wit [sic] malice or with reckless indifference to the state-protected rights of its employees, including [Scherer]."

These requests are improper. Although a requesting party is entitled to discover the factual basis for another party's contentions, a requesting party may not simply demand that an opposing party marshal its evidence in support of a particular contention. TEX. R. CIV. P. 192.3(j); R. 192, cmt. 5. Likewise, requests for the production of documents must describe the documents that are sought with "reasonable particularity." *Id.* R. 196.1(b).

In *Loftin v. Martin*, the supreme court considered whether it was proper for an injured worker to request that an insurance carrier produce all documents that supported its allegation that the Industrial Accident Board (IAB) had rendered an

award that was contrary to the undisputed evidence. 776 S.W.2d 145, 148 (Tex. 1989). After noting that requests under the rules of civil procedure "must be specific, must establish materiality, and must recite precisely what is wanted," the court held that the request for documents in support of the carrier's allegation regarding the IAB award failed to "identify any particular class or type of documents" and that, instead, it was "merely a request . . . to generally peruse all evidence" that the carrier might have. *Id.* (quoting Steely and Gayle, *Operation of the Discovery Rules*, 2 HOUSTON L. REV. 222, 223 (1964)); *see also* TEX. R. CIV. P. 196.1(b) (A request for production must "describe with reasonable particularity each item and category" of documents that must be produced.).

Since *Loftin*, Texas courts have consistently held that requests that demand the production of *all* evidence in support of a party's allegations are beyond the scope of permissible discovery. *See, e.g.*, *In re Master Flo Valve Inc.*, 485 S.W.3d 207, 218 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding) (a request for "all documents, communications, tangible or intangible evidence relating in any way to defendants' claims, defenses, or alleged damages" was overly broad); *In re TIG Ins. Co.*, 172 S.W.3d 160, 168 (Tex. App.—Beaumont 2005, orig. proceeding) (a series of requests seeking all documents that support an insurer's decision to deny a claim were improper under *Loftin*). The comments to our rules of civil procedure likewise note that "a party may object to a request for 'all documents relevant to the lawsuit' as [being] overly broad and not in compliance with the rule requiring specific requests for documents and [may] refuse to comply with it entirely." TEX. R. CIV. P. 193, cmt. 2. Indeed, requests of this nature may be so vague that the responding party is "unlikely to know what documents are required to be produced." *TIG*, 172 S.W.3d at 168.

Here, Endeavor attempts to distinguish its approach from *Loftin* by pointing out that, rather than serving Scherer with a single, global request for "all evidence," it has served a *series* of requests on Scherer, each of which asks for the disclosure and production of evidence that supports a particularized aspect of his allegations. Endeavor argues that *Loftin* does not foreclose this approach. In support of its argument, Endeavor relies on *Davis v. Pate*, 915 S.W.2d 76 (Tex. App.—Corpus Christi–Edinburg 1996, no writ). In *Davis*, the Thirteenth Court of Appeals held that a series of requests were appropriate when they asked for "any and all documents" that evidenced various, particular aspects of a plaintiff's claims. *Id.* at 79. The *Davis* court reasoned that, while *Loftin* involved a request for "all evidence that supports an opposing party's allegations," some of the requests made by the *Davis* defendant were acceptable because they specified "a particular aspect or element" of claims that had already been brought. *Id.* We respectfully disagree with the holding in *Davis* for three reasons.

First, *Davis* predates the comprehensive 1999 amendments to the Texas Rules of Civil Procedure, which made numerous and significant modifications to the rules for discovery. Among other things, the revised discovery rules include a comment to Rule 192 which notes that, although the factual contentions of a party are discoverable, the rule does not require "a marshalling of evidence." TEX. R. CIV. P. 192.3(j); R. 192.3, cmt. 5.[7] The holding in *Davis* permits discovery requests that call on the parties served with such requests to marshal documentary evidence. As such, *Davis* is no longer applicable in light of the 1999 amendments.

---

[7]The notes and comments to the 1999 revisions are not merely advisory, but "are intended to inform the construction and application of these rules by both courts and practitioners." *Order of Final Approval of Revisions to the Texas Rules of Civil Procedure*, Misc. Docket No. 98-9196 (Tex. Nov. 9, 1998), *reprinted in* 61 TEX. BAR J. 1140 (1998); Nathan L. Hecht & Robert H. Pemberton, *A Guide to the 1999 Texas Discovery Rules Revisions* (Nov. 11, 1998), http://adrr.com/law1/rules.htm; *see also In re Am. State Bank to Obtain Testimony of Wade*, No. 07-03-0483-CV, 2005 WL 1967262, at *1 (Tex. App.—Amarillo Aug. 16, 2005, pet. denied) (mem. op.).

Second, while we agree with *Davis* that a single request for *all* documents in support of a party's allegations is overly broad and burdensome, we do not interpret the *Loftin* request to fit within that category. To the contrary, the disputed request for production in *Loftin* was rejected even though it specified a "particular aspect or element" of the claims that were made by the insurance carrier. *See Davis*, 915 S.W.2d at 79; *see also Loftin*, 776 S.W.2d at 147–48. Specifically, the court in *Loftin* rejected a request for "all evidence" of the carrier's contention that the IAB had rendered an improper award. *Loftin*, 776 S.W.2d at 148. As such, we believe that the court in *Davis* did not distinguish the facts before it from the facts and circumstances in *Loftin*.

Finally, by allowing a party to survey every significant claim of its opponent by systematically seeking "all documents" that support each asserted claim, the holding in *Davis* readily provides a means by which civil litigants may continue to effectively issue a comprehensive call for an opponent to produce "all evidence." *Davis*, 915 S.W.2d at 77–79. We do not believe that this result is an intended consequence or outcome under *Loftin* or our rules of civil procedure. *See TIG*, 172 S.W.3d at 167–68 (a series of requests that essentially required the insurance carrier "to produce all documents supporting its contentions" that justified its denial of a claim was not reasonably specific).

We conclude that, regardless of whether they are global or particularized, requests for production that seek *all* evidence (or documents) that support an opposing party's allegations fail to describe the requested documents with "reasonable particularity," as required by Rule 196.1(b) and *Loftin*. Likewise, because such requests require a party to marshal its evidence, they exceed the permissible scope of discovery under the rules. Tex. R. Civ. P. 192.3, cmt. 5. As

23

such, the trial court abused its discretion when it ordered Scherer to respond to request for production nos. 55 through 61 and 67.

H. *Attorney-Client Agreement*

Request for production no. 68 sought "[Scherer's] contract with [his] attorneys, including a description of any fee agreement, related to [Scherer's] claim of attorney's fees." Scherer lodged several objections to this request, including an objection based on the attorney-client privilege. Nevertheless, Scherer agreed to produce a redacted copy of his fee agreement which only showed the agreed upon fee and the fact that the agreement existed.

The attorney-client privilege protects, among other things, communications between the client and the attorney. TEX. R. EVID. 503(b)(1)(A). However, the privilege can be waived when it is used offensively. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993). For example, attorney billing records are generally discoverable when a party asserts a claim for attorneys' fees. *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 813 (Tex. 2017) ("Attorney-billing information may be discoverable by virtue of the opposing party designating its counsel as a testifying expert.").

Similar to other discovery objections asserted by him, Scherer's response does not assert the attorney-client privilege by using the procedure described in Rule 193.3(a). *See* TEX. R. CIV. P. 193.3(a). However, in this instance, Scherer is entitled to withhold privileged communications with his attorney without asserting the privilege in his response. *See* TEX. R. CIV. P. 193.3(c) (a party need not comply with Rule 193.3(a) or (b) and may withhold a privileged communication to or from an attorney if the communication was made after consulting with the attorney and if it concerns the litigation in which the discovery is requested).

In determining whether a waiver of the attorney-client privilege has occurred, the trial court must consider the following factors: (1) whether the party asserting the privilege is seeking affirmative relief, (2) whether the privileged information sought is such that, if believed by the finder of fact, in all probability it would be outcome determinative of the cause of action asserted, and (3) whether disclosure of the confidential communication is the only means by which the aggrieved party may obtain the requested information. *Republic*, 856 S.W.2d at 163. In this instance, it is clear that—by seeking attorneys' fees—Scherer is asserting a claim for affirmative relief. As such, the first element of the *Republic* test is satisfied. *Id.*

With respect to the second element, the resolution of Scherer's claim for attorneys' fees will be based on the lodestar method articulated in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497–502 (Tex. 2019). Under the lodestar method, a base award is calculated by multiplying the reasonable number of hours worked by a reasonable hourly rate. *Id.* at 498. As such, any hourly rate to which the attorney and client have agreed may be relevant to the determination of whether the hourly rate used in the calculation of fees is reasonable. However, "mere relevance" is not sufficient to justify disclosure. *Republic*, 856 S.W.2d at 163. Instead, it is normally incumbent upon the party seeking the discovery of the fee agreement to prove that the agreement would in all probability be "outcome determinative." *Id.*

Here, Scherer has agreed to produce the portion of his fee agreement that establishes the nature of the fee sought. We presume that the materials he has voluntarily produced include a disclosure of whether the fee is a contingency arrangement and the terms of the contingency, or whether the fee sought is based on an hourly rate, and—if the fee is based on an hourly rate—the particular rate(s) that will be charged. We are unaware of any other information from the agreement that

25

would be relevant to a lodestar calculation of attorneys' fees, nor does Endeavor argue that the agreement is relevant for any other reason. Therefore, because Scherer has already agreed to produce any portions of his fee agreement that are relevant to a lodestar calculation of his fees, the trial court abused its discretion when it ordered Scherer to produce the unredacted fee agreement in its entirety.

I. *Authorizations*

Finally, Endeavor's requests for production include a request for Scherer to provide an executed "Authorization for Disclosure of Protected Health Information Psychotherapy Notes"; the request indicates that a copy of a proposed authorization is attached to the request (request for production no. 24). Additionally, Endeavor requested an "executed Authorization for Release of Employment Records" (request for production no. 25).[8]

In its motion to compel, Endeavor sought an order requiring Scherer to sign and thereafter provide the requested authorizations. Scherer complains that, by ordering him to respond to the requests for production that contained requests for "executed authorizations," the trial court has essentially ordered him to sign the authorizations in question in the form proposed by Endeavor. However, a request for production may not require Scherer to create and produce documents that do not already exist. TEX. R. CIV. P. 192.3(b) ("A person is required to produce a document or tangible thing that is within the person's possession, custody, or control."); *In re Preventative Pest Control Houston, LLC*, 580 S.W.3d 455, 460 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding) ("Under Rule 192.3(b), one cannot be forced to create a document that does not exist solely to comply with a request for production."); *In re Guzman*, 19 S.W.3d 522, 524–25 (Tex. App.—Corpus Christi–

---

[8]We have not had an opportunity to examine the proposed authorizations because they are not included in the record before us.

Edinburg 2000, orig. proceeding) (the trial court cannot order the production of executed authorizations that do not exist, solely to comply with a request for production). Thus, a party cannot be required to create a document to satisfy a document request. Here, the trial court's order, which required Scherer to respond to a request for production, is not an order to *execute* the authorizations that Endeavor seeks. Rather, although the intent of the order may have been otherwise, it merely requires Scherer to produce such authorizations *if* they already exist.

We recently held that a trial court may, under appropriate circumstances, order a party to execute an authorization. *In re Rius Rentals, LLC*, No. 11-21-00211-CV, 2021 WL 5115548, at \*4 (Tex. App.—Eastland Nov. 4, 2021, orig. proceeding) ("authorizations for the release of records related to a party may be an efficient means to obtain records that are in the possession of a third party, particularly if that third party requires such authorizations in order to avoid potential claims."). However, because authorizations are not listed as a form of permissible discovery under Rule 192.1, we concluded in *Rius*, as we do today, that the trial court may only compel the production of an executed authorization based on its finding that good cause exists to modify the procedures set forth in our rules of discovery. *Id.* at \*4; *see also* TEX. R. CIV. P. 191.1 ("the procedures . . . set forth in the rules pertaining to discovery may be modified in any suit . . . by court order for good cause"). In this case, the trial court did not explicitly or implicitly find that there was good cause to permit the use of authorizations as a form of permissible discovery. Despite this, other discovery tools exist for Endeavor to utilize to obtain the desired information that it would otherwise seek if signed authorizations were or were not produced.

We conclude that the trial court did not abuse its discretion when it ordered Scherer to respond to request for production nos. 24 and 25. However, if executed authorizations do not exist, Scherer need only respond by indicating that no

documents can be identified that are responsive to these requests. TEX. R. CIV. P. 196.2(b)(4). Likewise, if Endeavor seeks to compel Scherer to execute such authorizations in the future, it should seek an order for good cause under Rule 192.1.

## V. *This Court's Ruling*

We conditionally grant the petition for writ of mandamus, in part, and direct the trial court to modify its order, consistent with this opinion, with respect to interrogatory nos. 4 and 7, and request for production nos. 22, 55 through 61, 67, and 68. Mandamus will issue only if Judge Robertson fails to act by **February 29, 2024.**

W. STACY TROTTER

JUSTICE

February 15, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.